OPINION OF THE COURT
Arthur S. Hirsch, J.
In 1977, the publicity of the notorious "Son of Sam” murders gave rise to lucrative offers presented to the accused killer for interviews and story rights to the ignominious, world-shocking crimes. The New York State Legislature found it "abhorrent to one’s sense of justice and decency” that a killer could receive large sums of money for his story while the five people he allegedly killed and their families, who suffered grievous harm as a result of his conduct, would not be monetarily compensated (NY Legis Ann, 1977, p 267).
A bill was enacted whereby the New York State Crime Victims Compensation Board is empowered to act as custodian for moneys payable to an accused criminal who sells his memoirs to the media. The money so earned is to be placed in an escrow fund, and would be "payable to any victim of crimes committed by such person, provided that such person is eventually convicted of the crime and provided further that such victim, within five years of the date of the crime, brings a civil action in a court of competent jurisdiction and recovers a money judgment against such person or his representatives.” (Executive Law, § 632-a, subd 1.)
The board is required to publish a legal notice in newspapers every six months for five years from the date it received the money informing such victims of the availability of the fund to satisfy money judgments in favor of the victim.
After a lapse of five years from the establishment of the escrow fund, providing no action is pending against the criminal by any victim, the board will pay over to the criminal the escrow account upon proper application.
Subdivision 4 of the statute is particularly relevant to the instant motion. It states: "Notwithstanding any inconsistent provision of the civil practice law and rules with respect to the timely bringing of an action, the five year period provided for in subdivision one of this section shall not begin to run until an escrow account has been established.”
On August 22, 1972, some five years prior to the promulgation of the 1977 addition to the Executive Law, three bank *381 robbers, during the commission of the robbery, held a number of bank employees as hostages in the hopes that they would be able to bargain the lives of the hostages for their freedom and escape. Plaintiff was one of the hostages. Defendant John Wojtowicz was one of the bank robbers. After long and agonizing negotiations, defendant, with the hostages, left the bank and was taken to Kennedy Airport, at which time defendant was captured and the hostages rescued. Wojtowicz was arrested and incarcerated. The entire episode was preserved for posterity in dramatic form by the filming of the highly acclaimed motion picture, "Dog Day Afternoon.”
In December, 1977, pursuant to subdivision 1 of section 632-a, Warner International Corporation, producers of the motion picture, paid over to the Crime Victims Compensation Board the approximate amount of $43,000, representing the earnings of defendant Wojtowicz as a consequence of the financial exploitation of his crime.
In January, 1978, the plaintiff herein initiated an action for damages suffered as a result of the criminal conduct of the defendant.
Defendant, in the instant motion, moves for an order dismissing the complaint on grounds that the first two causes of action, alleging assault and battery and false imprisonment, are barred by a one-year Statute of Limitations (CPLR 215, subd 3), and that the third listed cause of action should be dismissed for failure to state a cause of action (CPLR 3211, subd [a], par 7).
STATUTE OF LIMITATIONS
The recency of section 632-a of the Executive Law disallows precedent to have been established. Both parties’ reading of the statute produce differing interpretations on the issue of the time in which a victim may start an action.
Defendant maintains the suit must be instituted within the relevant time periods provided by the CPLR, in this case, one year. Defendant reluctantly concedes, however, that it may be that the Legislature intended that the suit could be brought within five years of the date of the crime. They contend, however, that only in the event that a victim recovers a money judgment within that five-year period is he eligible to apply to the board for the escrow funds. Defendant points out that plaintiff herein has not recovered a judgment within five *382 years of the date of the crime and that fact creates an insuperable time barrier to his bringing the instant action.
The defendant does not give much credence to subdivision 4 of 632-a, finding it "an anomalous statutory ambiguity” and comments that plaintiffs reliance thereon is a mere "grasping on straws.” The "straws” plaintiff is grasping appear to this court to be more analagous to substantial logs.
In a simple analysis of that subdivision, it becomes patently clear that (1) the Statute of Limitations section of the CPLR is superseded and (2) the time limit set forth in subdivision 1 as being five years from the date of the crime does not begin to run until the escrow account is established, thereby extending the time in which a plaintiff victim may initiate a civil action to five years after the moneys have been deposited with the board.
This construction, carried to its logical conclusion, means that plaintiff victim can disregard the one-year Statute of Limitations requirement, foregoing the necessity of commencing a futile lawsuit against an indigent criminal perpetrator on the slight possibility that sometime in the future the individual will be able to sell his memoirs. A contrary interpretation would force every victim of an "interesting” crime to proceed with a costly lawsit in order to recover a judgment which most often would be worthless. The unnecessary inundation of the courts would be another negative consequence.
Law, to be effective, must have lability. The Legislature placed its imprimatur on the changes affecting the time restrictions of the CPLR, Senator Gold, in this issue stating: "if a number of years go by before the criminal makes his agreement to a publisher the crime victims may still bring their actions and be compensated.” (NY Legis Ann, 1977, p 267.)
In the case before the bar, plaintiff initiated his action one month after becoming cognizant that assets earned by defendant had been placed in escrow with the Crime Victims Compensation Board. The five years within which he was required to bring his action began to run, not as of the date of the crime, but as of December, 1977, the date the assets were deposited pursuant to subdivision 4 of section 632-a. Accordingly, defendant’s motion to strike the first and second causes of action is denied.
UNJUST ENRICHMENT
Plaintiff’s third cause of action is ambiguous in both *383 form and draftsmanship. Defendant, challenging its legal sufficiency, suggests that plaintiff is really seeking to present a claim under the ambit of section 51 of the Civil Rights Law instead of the "unjust enrichment” verbiage set forth in the complaint, which would require some sort of contractual or quasi-contractual relationship between the parties. Plaintiff, whose allegations are not recognizable as a claim based upon invasion of privacy, nevertheless heartily agrees that section 51, "invasion of privacy,” is exactly what he had in mind. While CPLR liberality will permit accepting any theory presented in the complaint that would qualify the allegations as a cause of action (Curren v O’Connor, 304 NY 515), in this instance, the court, even with the most tortuous stretch of reasoning, cannot find the allegations of the third cause of action to be valid nor sufficient on its face. Accordingly, the third cause of action is stricken with leave to plaintiff to serve an amended complaint to allege a cause of action under the Civil Rights Law. Said amendment is to be served within 10 days after the service of the order to be entered herein.