OPINION OF THE COURT
Chief Judge Breitel.
Petitioners are former part-time estate tax attorneys in the noncompetitive class of the civil service in the State Department of Taxation and Finance. They brought this proceeding under CPLR article 78 for reinstatement to the positions from which they had been removed by respondent commissioner. They appeal from an order of the Appellate Division which affirmed, one Justice dissenting, the dismissal of their petition on grounds of res judicata. An earlier petition seeking the same relief had resulted in a final judgment for respondent.
At issue is whether petitioners may escape the doctrine of res judicata by tendering an additional basis for finding their dismissals illegal, namely, that the dismissals were patronage dismissals made in bad faith in contravention of the Supreme Court’s intervening decision in Elrod v Burns (427 US 347).
The order of the Appellate Division should be affirmed. Once a cause of action has been finally adjudicated, tender of an additional legal issue not raised in the original action does not avoid the bar of res judicata merely because the Supreme Court of the United States had not fully articulated the additional issue until after the cause of action had been adjudicated.
Petitioners were among 44 part-time estate tax attorneys, all of whom resigned or were removed during 1975 and were replaced by members of a different political party. In July, 1975, before the removals had been completed, several of the attorneys brought a proceeding seeking reinstatement (see *35 Matter of Nolan v Tully, 52 AD2d 295, mot for lv to app den 40 NY2d 803, mot to dismiss app granted 40 NY2d 844). That proceeding, the Nolan proceeding, was determined to be a class action on behalf of all estate tax attorneys who had been or might be discharged before final determination of the proceeding (CPLR 902). Petitioners in the present case were, therefore, members of the class, although they were not actually discharged until after the Nolan proceeding was brought.* Relief was sought primarily under section 75 of the Civil Service Law, but the petition, as amended, also alleged a violation of State and Federal constitutional rights.
The instant proceeding was brought while the Nolan matter was still pending. In addition to the allegations made in the Nolan proceeding, the petition alleged that the terminations were not in good faith and that "the incumbents were removed * * * for the sole purpose of appointing successors with different political affiliations”. By agreement of counsel, the instant proceeding was held in abeyance pending final adjudication of the Nolan proceeding.
At the Appellate Division in the Nolan proceeding, the Nolan petitioner argued that the dismissals were made in bad faith, and sought to have the court take judicial notice of allegations to that effect made in the petition in the instant proceeding. The Appellate Division, in affirming the dismissal of the Nolan petition, however, discussed only the issues arising under section 75 of the Civil Service Law. The court held that despite the fact that petitioners were in the noncompetitive class of the civil service, they were not entitled to tenure because they were independent officers under section 22 of the Civil Service Law. (Matter of Nolan v Tully, 52 AD2d 295, 296-299, supra.) Then, in Elrod v Burns (427 US 347, supra), decided shortly after the Appellate Division’s affirmance in Nolan, a three-Judge plurality of the Supreme Court concluded that patronage dismissals were unconstitutional under the First and Fourteenth Amendments of the United States Constitution (id., at p 373). Leave to appeal the *36 Nolan case to this court was nevertheless denied, and an appeal as of right was dismissed for lack of a substantial constitutional question (see 40 NY2d 803, supra; 40 NY2d 844, supra). A motion by petitioners in this case to intervene in this court was dismissed as academic.
Following final adjudication of the Nolan proceeding, the instant proceeding was dismissed on res judicata grounds, and the dismissal- was affirmed at the Appellate Division, one Justice dissenting.
At the outset, it should be evident that the gravamen in this proceeding is the same as that in the Nolan proceeding. In each case, petitioners challenged the patronage dismissals, and seek reinstatement. The foundation facts are the same, and so is the relief sought. Mere differences in legal theory do not create separate causes of action (Matter of Reilly v Reid, 45 NY2d 24, 30, decided herewith; Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 61.1). Applying the consequential test of Schuylkill Fuel Corp. v Nieberg Realty Corp. (250 NY 304, 306-307), there can be no question that a judgment for petitioners in this case would destroy a right adjudicated in the Nolan proceeding, namely, respondent’s power to dismiss petitioners.
The only question of even marginal substance involves the purported unavailability in the Nolan proceeding of a legal issue tendered in this proceeding. Petitioners contend that since the issue in Elrod v Burns (427 US 347, supra) was not resolved in time to raise the unconstitutionality of patronage dismissals in the Nolan proceeding, they should not be barred from raising that issue now.
It is settled law, however, that "[t]he conclusive effect of a final disposition is not to be disturbed by a subsequent change in decisional law” (Slater v American Min. Spirits Co., 33 NY2d 443, 447; see Sears, Roebuck & Co. v 9 Ave. — 31 St. Corp., 274 NY 388, 398-403). The principle applies even when the change heralds a new policy as important as the relative apportionment doctrine evolved in Dole v Dow Chem. Co. (30 NY2d 143; see Slater v American Min. Spirits Co., 33 NY2d 443, 447, supra). That the change in legal doctrine is constitutional in nature does not, automatically, dictate a different result. It may be that where a final adjudication affects "important ongoing social or political relationships”, a subsequent major change in constitutional doctrine should permit reconsideration of the original claim, at least as to its future *37 effect (see Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 61.2, Comment e). That possibility need not be addressed, for the situation posited is not presented in this case.
Moreover, it is not clear that the Elrod case represents a major change in the law. First, the scope of the decision remains uncertain, since a majority of the Supreme Court was unwilling to hold all patronage dismissals constitutionally impermissible (427 US, at pp 374-375 [Stewart, J., concurring]; at pp 375-376 [Burger, Ch. J., dissenting]; at pp 376-389 [Powell, J., dissenting], supra). Second, as petitioners acknowledge, civil service employees in this State have long been protected from certain kinds of dismissals made in bad faith upon change in the appointing power (cf., e.g., Matter of Wipfler v Klebes, 284 NY 248, 252-254). Although this protection originates in the merit selection provisions of the State Constitution rather than in the Federal Constitution, and the extent of the protection may not be completely defined, the issue was there for petitioners to raise. Not having done so in the Nolan proceeding, they may not now be heard to complain.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

Not questioned by petitioners is the res judicata effect, generally, of class action judgments against members of the class who do not actually participate in the litigation. The issue has been extensively treated elsewhere (see, e.g., Restatement, Judgments 2d [Tent Draft No. 2, 1975], § 85, subd [1], par [e], Comment e; 2 Weinstein-Korn-Miller, NY Civ Prac, par 905.02; Young v Shuart, 67 Misc 2d 689, 693 [Meyer, J.], mod on other grounds 39 AD2d 724). In any event, it is not reached since it was never raised.