ROBERT BARRETT, Respondent, v JOHN WOJTOWICZ, Appellant.

Second Department, March 12, 1979

APPEARANCES OF COUNSEL

*Heinemann & Chikofsky (Edward M. Chikofsky* and *Guy L. Heinemann* of counsel), for appellant.

*Fischer & Satine (Roy A. Satine* of counsel), for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

■ Although arising in a pleading context, the novel and interesting issue presented by this appeal is whether the recently enacted section 632-a of the Executive Law (L 1977, ch 823, eff Aug. 11, 1977, as amd by L 1978, ch 417) either revives a civil cause of action for assault or false imprisonment otherwise barred by the one-year limitation period of CPLR 215 or creates a new and independent cause of action predicated upon the provisions of the Executive Law.[1] We hold that it does the latter.

---

1. The opposing and reply affirmations demonstrate that interpretation of section 632-a of the Executive Law, as it affects the Statute of Limitations, was the issue upon which the parties focused and Special Term's decision (94 Misc 2d 379) followed the charted course of counsel. We do likewise although the plaintiff's complaint should be amended to set forth his reliance on the Executive Law.

# I

This suit, instituted in January, 1978, alleges three causes of action relating to events which occurred on August 22, 1972. The first cause of action alleges assault, the second false imprisonment and the third (which Special Term properly stated was "ambiguous in both form and draftsmanship" [94 Misc 2d 379, 382-383]) is apparently, although vaguely so, for invasion of privacy. Defendant moved to dismiss the three causes of action on the ground that they were not commenced within one year after they arose (see CPLR 215) and, further, to dismiss the third cause on the ground that it did not state a cause of action. Special Term denied the motion as to the first and second causes of action and granted it as to the third with leave to serve an amended complaint "alleging a cause of action under the Civil Rights Law of the State of New York." Defendant has appealed but plaintiff has not cross-appealed as to the dismissal of the third cause of action. We affirm.

The basis of defendant's motion to dismiss the first two causes of action on the ground that they are barred by the one-year limitation period of CPLR 215 (subd 3) is stated in counsel's moving affidavit in the following terms:

"The events upon which the causes of action herein alleged are based occurred on August 22, 1972—five and one-half years ago. Defendant John Wojtowicz, in the company of two others, robbed a neighborhood bank branch of the Chase Manhattan Bank on Avenue P and East Third Street in Brooklyn. During the course of the bank robbery, Wojtowicz and a confederate, finding themselves surrounded by police, barricaded themselves inside the bank, holding several bank employees hostage for a period of several hours. Eventually, Wojtowicz and the hostages were coaxed out of the bank and taken by airport bus to Kennedy Airport, at which time Wojtowicz was captured and the hostages rescued. It is undisputed, despite contrary allegations in the verified complaint, that during the entire episode, none of the hostages (including plaintiff) were harmed by Wojtowicz in any way. The events of the crime have been preserved for posterity in dramatic form by the motion picture 'Dog Day Afternoon' (1975).

"3. Wojtowicz subsequently was arrested, pleaded guilty to armed bank robbery (18 U.S.C. Sec. 2113(d)) and was sentenced on April 23, 1973 to a term of twenty years imprison-

ment, which sentence ultimately was reduced to fifteen years on September 2, 1977 by the United States District Court for the Eastern District of New York (Hon. Thomas C. Platt, J.) on remand from the United States Court of Appeals for the Second Circuit. *Wojtowicz v. United States,* 550 F.2d 786 (2d Cir. 1977). * * *

"5. Consideration of the recently-enacted Section 632-a of the Executive Law (Chapter 823, Laws of 1977) (effective August 11, 1977) reveals the primary motivation for the institution of this plainly time-barred action. This statute * * * provides that the New York State Crime Victims Compensation Board is to become custodian for all moneys, royalties or profits received or contracted for by any person accused of a crime who sells to the media his memoirs or expressions of thoughts or feelings for the purpose of dramatic re-enactment of the alleged crime. Under the terms of the law, the Crime Victims Compensation Board acts in the role of an escrow agent and may pay over such moneys to a victim of the crime in question, provided: (a) the perpetrator is eventually convicted, and (b) the victim, *within five years of the date of the crime,* brings a civil action in a court of competent jurisdiction and recovers a money judgment against the perpetrator. *Executive Law,* Sec. 632-a(1)".

## II

### THE HISTORY OF ARTICLE 22 OF THE EXECUTIVE LAW

Sections 620 through 635 of the Executive Law, comprising a new article 22 thereof entitled "CRIME VICTIMS COMPENSATION BOARD" (hereafter the board), were enacted in 1966 (L 1966, ch 894). Section 620 states that "many innocent persons suffer personal physical injury or death as a result of criminal acts" and that "there is a need for governmental financial assistance for such victims of crime. Accordingly, it is the legislature's intent that aid, care and support be provided by the state, as a matter of grace, for such victims of crime".

Eleven years later, section 632-a was added to article 22. It is entitled "Distribution of moneys received as a result of the commission of crime" (L 1977, ch 823, eff Aug. 11, 1977). This section is distinctive since it provides for payments to victims of crime, not from the State's fisc, but from newly acquired moneys obtained by the perpetrator of the crime based on payments to him "with respect to the reenactment of such

crime, by way of a movie, book, magazine article, radio or television presentation, live entertainment of any kind, or from the expression of such person's thoughts, feelings, opinions or emotions regarding such crime" (subd 1). The party contracting with such perpetrator is required to "pay over to the board any moneys which would otherwise, by terms of such contract, be owing to the person so convicted or his representatives. The board shall deposit such moneys in an escrow account for the benefit of and payable to any victim of crimes committed by such person, provided that such victim * * * *within five years of the date of the crime, brings a civil action in a court of competent jurisdiction and recovers a money judgment against such person or his representatives"* (subd 1; emphasis supplied).

In this case the board, in December, 1977, received and is holding in escrow some $43,000 paid to defendant for the release of his rights to the motion picture re-enactment of the crime. Concededly, plaintiff was one of the persons who had been held hostage.

In January, 1978, one month after that payment was made into the escrow fund, and five months after the enactment of section 632-a of the Executive Law, but five years and five months after the date the crime was committed, plaintiff instituted this suit to recover damages for assault and false imprisonment. Under ordinary circumstances his suit would be time barred for not having been brought within the one-year limitation period specified in CPLR 215 (subd 3).

### III

#### THE GENESIS OF SECTION 632-A OF THE EXECUTIVE LAW

Section 632-a of the Executive Law was proposed to the State Legislature as a result of the notoriety of the "Son of Sam" letters. The memorandum of the bill's sponsor, Senator Emmanuel R. Gold, stated that "[i]t is abhorrent to one's sense of justice and decency that an individual, such as the forty-four caliber killer, can expect to receive large sums of money for his story once he is captured—while five people are dead, other people were injured as a result of his conduct. This bill would make it clear that in all criminal situations, the victim must be more important than the criminal" (NY Legis Ann, 1977, p 267). The memorandum also stated *(supra,* p 267) that the bill *"reinstitutes the statute of limitations so*

*that if a number of years go by before the criminal makes his agreement to [sic] a publisher the crime victims may still bring their actions and be compensated"* (emphasis supplied).

## IV

### THE RELEVANT PROVISIONS OF SECTION 632-A OF THE EXECUTIVE LAW (L 1977, CH 823)

"§ 632-a. Distribution of moneys received as a result of the commission of crime.

"1. Every person, firm, corporation, partnership, association or other legal entity contracting with any person or the representative or assignee of any person, accused of a crime in this state, with respect to the reenactment of such crime, by way of a movie, book, magazine article, radio or television presentation, live entertainment of any kind, or from the expression of such person's thoughts, feelings, opinions or emotions regarding such crime, shall pay over to the board any moneys which would otherwise, by terms of such contract, be owing to the person so convicted or his representatives. The board shall deposit such moneys in an escrow account for the benefit of and payable to any victim of crimes committed by such person, provided that such person is eventually convicted of the crime and *provided* further *that such victim, within five years of the date of the crime, brings a civil action* in a court of competent jurisdiction and recovers a money judgment against such person or his representatives.

"2. The board, at least once every six months *for five years from the date it receives such moneys,* shall cause to have published a legal notice in newspapers of general circulation in each county of the state advising such victims that such escrow moneys are available to satisfy money judgments pursuant to this section.

"3. Upon disposition of charges favorable to any person accused of committing a crime, or upon a showing by such person *that five years have elapsed from the establishment of such escrow account* and further that no actions are pending against such person pursuant to this section the board shall immediately pay over any moneys in the escrow account to such person.

"4. *Notwithstanding any inconsistent provision of the civil practice law and rules with respect to the timely bringing of an action, the five year period provided for in subdivision one*

*of this section shall not begin to run until an escrow account has been established"* (emphasis supplied).

Of the four references to a five-year period, it is only the first, in subdivision 1, that relates the start of that period to "the date of the crime". Subdivisions 2 and 3 refer to the inception of the five-year period as the date of receipt by the board of the moneys which are to be placed in the escrow account. Nevertheless, since subdivision 1 states that the crime victim is to receive the benefit of the escrow moneys *"provided * * * such victim, within five years of the date of the crime,* brings a civil action", that would seem to outweigh the references in subdivisions 2 and 3 which merely relate to ministerial acts to be performed by the board.

This still leaves an apparent conflict between subdivision 1 (that the victim must bring a civil action "within five years of the date of the crime") and subdivision 4 (that notwithstanding any CPLR provision "with respect to the timely bringing of an action, the five year period provided for in subdivision one of this section shall not begin to run until an escrow account has been established"). Special Term concluded that subdivision 4 was "particularly relevant" and "patently clear" and that it was not " 'an anomalous statutory ambiguity' " (94 Misc 2d 379, 380, 382).

Defendant-appellant argues that Special Term's "tortuous reading of subparagraph (4) * * * completely disregarded subparagraph (1)" and leads to "the extraordinary—and wholly unprecedented—result that, for all intents and purposes, no statute of limitations ever commences to run against any criminal perpetrator". Appellant makes no further attempt to explain subdivision 4, except to imply that it was an anomaly. Thus, appellant has matched Special Term's effective disregard of subdivision 1 by his own disregard of subdivision 4.

It is indeed difficult to reconcile subdivisions 1 and 4. If subdivision 4 is the dominant subdivision (as Special Term held) so that it effectively tolled the period between the crime and the establishment of the escrow fund, it still made no sense whatever to provide in subdivision 1 that a crime victim could recover from the escrow fund "provided [that] within five years of the date of the crime [he] brings a civil action". Obviously no escrow fund could be established until an appreciable period after the crime.

Since subdivision 4 starts with, "Notwithstanding any incon-

sistent provision of the civil practice law and rules with respect to the timely bringing of an action", it can be rationally argued that its purpose was to increase the Statute of Limitations for assault and false imprisonment from one year to five years *where the victim seeks recovery from moneys received by the assaulter for the depiction or narration of the crime.* However, this would still not explain away the statement in subdivision 4 that the five-year period provided for in subdivision 1 of this section "shall not begin to run until an escrow account has been established."

Further, it seems to be too much of a coincidence that on the one hand, the limitation period for bringing the action after "the date of the crime" (subd 1) and on the other, the period lapsing from the establishment of the escrow account (subds 2, 3, 4) is five years for each. The common sense explanation would seem to be that the drafters of the legislation intended to have everything mesh, but failed to realize that they were not expressing that intent.

The legislative bill jacket includes an adverse memorandum from Franklin E. White, of the Division of the Budget. Apparently the advice of that department had been sought because the funds for payment to crime victims had traditionally come from the public treasury. Mr. White listed possible constitutional arguments against the bill and recommended a veto. His final comment, handwritten (apparently for emphasis), was: "This bill is terribly drafted!! Its intent & objectives should be praised but it should be vetoed with a promise to resubmit a bill which will (1) be clear [and] (2) have a chance of surviving a constitutional attack." However, he did not comment on the apparent discrepancies between subdivisions 1 and 4.

Fortunately, circumstances subsequent to Special Term's decision have made it unnecessary to further scrutinize the tangled web woven by chapter 823 of the Laws of 1977. That "Sorry Scheme of Things Entire" was "Remold[ed] * * * nearer to the Heart's Desire" (Fitzgerald, Rubaiyat of Omar Khayyam, stanza 99) by chapter 417 of the Laws of 1978.

## V

### THE AMENDMENT OF SECTION 632-A OF THE EXECUTIVE LAW

On June 19, 1978 section 632-a of the Executive Law was amended (L 1978, ch 417, eff Sept. 1, 1978). The amendment

expanded the original statute in various respects.[2] Determinative for our purpose is the fact that subdivision 1 was changed from "provided further that such victim, within five years of the date of the *crime,* brings a civil action", to "provided that such victim, within five years of the date of the *establishment of such escrow account,* brings a civil action" (emphasis supplied). By this change each of the mentions of a five-year period in section 632-a was tied to the same event, to wit, the establishment of the escrow account. Had subdivision 1 been so worded in the original statute, everything would have meshed and there would have been no discrepancy between it and the rest of the statute.

Although the comments and recommendations made by the State agencies, as contained in the legislative bill jacket, do not specifically refer to the removal of the ambiguity relating to the five-year period (the bulk of the commentaries merely discuss other aspects of the amendment), the memorandum of Robert M. Schlanger, of the Division of Criminal Justice Services, states that "[t]he instant bill addresses details, tightens up some of its provisions and plugs a number of loopholes [and] the implementation of [the original statute's] public policy is made more logical, definite and certain."

The only specific mention of the removal of the "five year" ambiguity is that contained in a supporting letter of John L. Amabile, Esq., Chairman of the Committee on State Legislation of the Association of the Bar of the City of New York. That letter includes the following: "Additionally, the amended bill resolves an ambiguity in the original bill as to whether the five years in which a victim could institute suit began to run from the date of the *crime* or the establishment of the escrow account. The amendment clearly establishes a five year period beginning with the establishment of the escrow account. This is significant in that if a number of years go by before a criminal enters into a contract with a publisher, etc., the crime victim *[sic]* or their representatives may still bring their actions and be compensated."

Thus, the amended statute removed the ambiguities which

---

2. The amendment included provisions that an accused who had been found not guilty as a result of mental disease was nevertheless to be deemed a convicted person for the purposes of the escrow funds; that if an accused were found to be unfit to proceed to trial as a result of mental disease or lack of capacity, the board was to bring an interpleader action to determine distribution of the escrow funds; and that royalties received from tape recordings and records were within the scope of the escrow fund.

existed in the original statute by reason of the differing time provisions contained in subdivisions 1 and 4.

## VI

### THE EFFECT OF SECTION 632-A OF THE EXECUTIVE LAW AS AMENDED

In *Robinson v Robbins Dry Dock & Repair Co.* (238 NY 271), it appeared that after commencement of plaintiff's action to recover for the death of her husband at a time when it was barred by the Statute of Limitations, a statute removing the bar was enacted. The court held that the plaintiff was not required to bring a new action and that she could proceed with her action although it had been time barred when first commenced. Therefore, assuming, *arguendo,* that section 632-a of the Executive Law, as originally enacted, barred this action at the time of its inception, plaintiff should nevertheless be permitted to proceed because of the expanded limitation period provided by the amendment, unless such expansion of the limitation period is unconstitutional.

In considering whether such expansion (of five years from the date of the crime to five years from the establishment of the escrow account) is constitutional, we must also consider the more general expansion of the assault and false imprisonment limitations period from one year (CPLR 215, subd 3) to five years, where the proceeding is targeted on a recovery from the escrow account.

In New York Practice, Professor David Siegel said (§ 38, p 40):

"Constitutional considerations intervene when the Legislature attempts to revive an expired period or curtail an existing one.

"If the passage of the period has as a practical matter resulted in the vesting of any interest in tangible property, real or personal, the federal due process clause precludes its revival. If the claim was a mere chose in action, however, such as a money action on a contract, the federal constitution is apparently no barrier to revival but the state constitution may be. The state constitution's due process clause has been construed to require all revivor statutes to be demonstrably reasonable. The question is sui generis and it is of course the courts which have the ultimate say on reasonableness."

In *Gallewski v Hentz & Co.* (301 NY 164, 171), the court, quoting *Chase Securities Corp. v Donaldson* (325 US 304, 311-312), said that " 'where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar' ". The court in *Gallewski* also held *(supra,* p 174) that "the Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated", so that the court was "free to approach each revival statute on its individual merits, in the light of its own peculiar circumstances and setting."

The right of a victim to recover from the funds a criminal would otherwise receive from depiction of the crime is a classic example of a case "where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated". Since we are "free to approach each revival statute on its individual merits, in the light of its own peculiar circumstances and setting", we hold that it was within the Legislature's prerogative to expand the limitation period for the commencement of a *civil* assault or false imprisonment suit from one year after the tortious events to five years after establishment of an escrow account relating to a *crime* in which plaintiff was a victim, even though those causes of action had already been barred, if the recovery is limited solely to satisfactions out of the escrow account. Indeed it was the rectification of what would otherwise be a terrible wrong.

Clearly, it is not for lack of merit that the victim of a crime does not at once sue for the tortious injury. In fact the criminal conviction would be conclusive proof of most of the elements necessary to recover on an analogous claim in tort. The obvious reason that a victim ordinarily withholds suit is that he believes that the defendant is indigent, so that the expenditure of the time and money involved in a civil litigation would be of no avail. Indeed, if there were any ambiguity now in the statute, public policy would require that the law should be liberally interpreted in favor of the victim (and this

was apparently the basis for Special Term's opinion). It would be ironic to hold that a victim who may have been killed, maimed or otherwise injured is to be left remediless while the felon could reap the "fall-out" rewards of the victim's injuries.

It is not unprecedented for the Legislature to provide a separate limitation period for some novel or tangential aspect of a tort. New York's wrongful death statute enacted in 1847 (L 1847, ch 450) provided for recovery "[w]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages * * * provided that every such action shall be commenced within two years after the death of such deceased person." That two-year period overrode any limitation period that would otherwise apply in a tort action where damages for *wrongful death* were not being sought.

Similarly, here the Legislature has created a new cause of action pointed, as the title of the section indicates, towards "Distribution of moneys received as a result of the commission of crime", and in connection therewith has created its own Statute of Limitations. Although the action here is generally grounded on assault and wrongful imprisonment *it is based on a statute creating a new in rem cause of action* that is not limited to these willful torts but more generally "to any victim of crimes committed by [the accused]". The Legislature had the right to provide for the same limitation period, no matter what the crime, where the victim seeks the proceeds from listed sources that would otherwise be retained by the criminal. It has a right to fix a statutory limitation (see *Grant v Guidotti,* — AD2d —).

■ However, a caveat must be noted. There is no question here that the one-year limitation of CPLR 215 (subd 3) barred the traditional in personam actions for assault and false imprisonment. Accordingly, any judgment that may be recovered by plaintiff should be deemed one in rem and be limited by the court to a recovery of the pro rata amount which is found to be payable to him from the escrow account held by the Crime Victims Compensation Board for the benefit of *all* the victims of the defendant's crime and such judgment should not be deemed a judgment in personam against any other assets of the defendant. With such limitations in mind, the order should be affirmed.

Gulotta, J. P., Cohalan and Margett, JJ., concur.

Order of the Supreme Court, Kings County, dated May 17, 1978, affirmed, with $50 costs and disbursements.