**George HEATH, Plaintiff,**

v.

**WARNER COMMUNICATIONS, INC., Steven Ross, Bernard R. Sorkin, New York State Crime Victims Board, Barbara A. Leak, Chairperson of the New York State Crime Victims Board, Lorraine Felegy, Gennaro A. Fischetti, George L. Grobe, Frank Marin, Diane McGrath–McKechnie, Angelo Petromelis, Individually and in their capacities as members of the New York State Crime Victims Board, Defendants.**

No. 92 Civ. 4020 (JES).

United States District Court,
S.D. New York.

June 28, 1995.

George Heath, Beacon, NY, plaintiff, pro se.

Dennis C. Vacco, Atty. Gen. of State of N.Y. (Joel Graber, Asst. Atty. Gen., of counsel), New York City, for defendants New York State Crime Victims Bd., Barbara A. Leak, Lorraine Felegy, Gennaro A. Fischetti, George L. Grobe, Frank Marin, Diane McGrath–McKechnie and Angelo Petromelis.

Phillip Pierce, New York City, for defendants Warner Communications, Inc., Steven Ross and Bernard R. Sorkin.

## MEMORANDUM OPINION
## AND ORDER

SPRIZZO, District Judge:

Plaintiff George Heath, acting *pro se,* brings the instant action against defendants

Warner Communications, Inc., ("Warner Comm."),[1] Steven Ross,[2] Bernard R. Sorkin (collectively "the Warner defendants"), the New York State Crime Victims Board (the "NYCV Board"), Barbara A. Leak, Diane McGrath–McKechnie, Lorraine Felegy, Gennaro A. Fischetti, Angelo Petromelis, George L. Grobe[3] and Frank Marin (collectively "the Board defendants"). In this action, Heath claims, *inter alia*, that defendants violated his constitutional rights by applying former section 632–a of the New York Executive Law. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment based upon, *inter alia*, the doctrine of *res judicata*. For the reasons that follow, summary judgment is granted.

## BACKGROUND

On May 4, 1977, John Wojtowicz and Artists Entertainment Complex, Inc. ("A.E.C.") entered into a settlement agreement. Defendants' Statement Pursuant to Local Rule 3(g) ("Deft. 3(g) St.") ¶ 1; Pierce Aff. ¶ 3, Exh. A; Graber Decl. ¶ 5, Exh. A. The settlement agreement provided that Wojtowicz would receive one percent of the net profits of the film "Dog Day Afternoon."[4] Deft. 3(g) St. ¶ 1; Pierce Aff. ¶ 3, Exh. A; Graber Decl. ¶ 5, Exh. A. The settlement agreement also provided that plaintiff George Heath would receive 6⅔ percent of that one percent share. Deft. 3(g) St. ¶ 2; Pierce Aff. ¶ 3, Exh. A; Graber Decl. ¶¶ 4–5, Exh. A. Neither Warner Bros., Inc. ("Warner Bros."), which was the film distribution agent for the movie,[5] nor Heath was a party to the settlement agreement. Deft. 3(g) St. ¶ 3; Pierce Aff. ¶ 3, Exh. A; Graber Decl. ¶ 5, Exh. A.

Prior to the disbursement of any profits under the settlement agreement, however, the State of New York enacted former section 632–a of the New York Executive Law. Deft. 3(g) St. ¶ 4. The statute required that all royalties owed to a convicted person, if generated from an artistic depiction of his crime, must be paid to the NYCV Board for the benefit of victims of that crime. *See* N.Y. Exec. Law § 632–a (repealed 1992). In October 1977, the NYCV Board directed Warner Bros. and A.E.C. to comply with the statute. Deft. 3(g) St. ¶ 5; Pierce Aff. ¶ 6, Exh. B. In November 1977, Warner Bros. paid certain royalties to the NYCV Board, and thereafter, three victims recovered civil judgments against Wojtowicz in the Supreme Court, Kings County of the State of New York. Pierce Aff. ¶ 7; Graber Decl. ¶ 6. The NYCV Board, as statutorily required, paid the funds to these victims thereby exhausting the escrow account. Pierce Aff. ¶ 7; Graber Decl. ¶ 6.

In August 1978, Heath commenced a declaratory action in the Supreme Court, New York County of the State of New York against, *inter alia*, A.E.C., Warner Bros. and the NYCV Board. In that action, Heath sought a declaration concerning his rights to profits paid by Warner Bros. to the NYCV Board and challenged the constitutionality of former section 632–a. On October 26, 1981, the state court held that Heath was entitled to his contractual share, but only "after disposition of all statutorily mandated payments." Pierce Aff. ¶ 8, Exh. C; Graber Decl. ¶ 7, Exh. B. On October 29, 1982, the Appellate Division, First Department affirmed. Pierce Aff. ¶ 8; Graber Decl. ¶ 7. On January 4, 1983, the New York Court of Appeals denied leave to appeal. Pierce Aff.

---

1. During 1989–90, Time Warner, Inc. ("Time Warner") acquired the stock of Warner Comm. Affidavit of Phillip Pierce Sworn to April 8, 1993 ("Pierce Aff.") ¶ 3.

2. Defendant Steven Ross, the former Chairman of the Board of Time Warner, died during the pendency of the instant action. *See* Suggestion of Death Upon the Record dated January 11, 1993.

3. Defendant George L. Grobe, a former member of the NYCV Board, also died during the pen-

dency of this action. Declaration of Joel Graber dated April 6, 1993 ("Graber Decl.") ¶ 1 n. 1.

4. The movie "Dog Day Afternoon" concerns the infamous armed bank robbery perpetrated by Wojtowicz. Pierce Aff. ¶ 4. While incarcerated, Wojtowicz sold his story rights to A.E.C. *Id.* ¶ 5.

5. Defendant Warner Comm. is the parent company of Warner Bros., a wholly owned, independently functioning subsidiary engaged in film distribution. Pierce Aff. ¶ 3.

¶ 8; Graber Decl. ¶ 7.[6]

In November 1982, Heath commenced a virtually identical action in the United States District Court for the Northern District of New York. In that action, Heath claimed that Warner Bros. had breached the settlement agreement, and that Warner Bros. and the NYCV Board had conspired to deprive him of his constitutional rights. Pierce Aff. ¶ 9; Graber Decl. ¶ 8. On June 18, 1984, the district court held that the action was barred by the relevant statute of limitations and by the state court action under the doctrine of *res judicata*, and that Heath otherwise failed to state a cause of action. Pierce Aff. ¶ 9; Graber Decl. ¶ 8. On March 15, 1985, the Second Circuit affirmed. Pierce Aff. ¶ 9; Graber Decl. ¶ 8. On May 10, 1985, the Second Circuit denied Heath's petition for a rehearing *en banc*. Pierce Aff. ¶ 9; Graber Decl. ¶ 8.

In December 1983, the NYCV Board declined to accept new royalties from Warner Bros., reasoning that its jurisdiction had terminated under the statute. Pierce Aff. ¶ 10. As a result, Warner Bros. commenced an interpleader action in the Supreme Court, New York County to determine entitlement to accrued royalties. By decision and order dated December 10, 1986, the state court ordered Warner Bros. to direct the accrued funds, as well as future accruals, to the NYCV Board. Pierce Aff. ¶ 10, Exh. D; Graber Decl. ¶ 9, Exh. C. By order dated May 3, 1988, the Appellate Division denied a motion for summary judgment by Heath and Wojtowicz. Pierce Aff. ¶ 10; Graber Decl. ¶ 9. On February 9, 1989, the Court of Appeals denied leave to appeal. Pierce Aff. ¶ 10; Graber Decl. ¶ 9. On April 24, 1989, the United States Supreme Court denied certiorari. Pierce Aff. ¶ 10; Graber Decl. ¶ 9.

On January 18, 1985, Heath commenced an action, purportedly on behalf of Heath and Wojtowicz, against, *inter alia*, A.E.C., Warner Comm., Warner Bros., Pierce, Sorkin and the NYCV Board in the United States District Court for the Southern District of New York. *See Heath v. Warner Communi-*

*cations, Inc.*, 1986 WL 6169 (S.D.N.Y.1986). In that action, Heath claimed that defendants deprived him of due process of law by applying the unconstitutional statute, breached the settlement agreement and fraudulently induced Wojtowicz to enter the settlement agreement. *Id.* at *3. By memorandum opinion and order dated May 27, 1986, the district court held that the action was barred by the earlier state and federal actions under the doctrine of *res judicata. Id.* at *6. On June 18, 1986, the district court enjoined Heath individually and on behalf of Wojtowicz from commencing further litigation regarding their rights under the settlement agreement without leave of court. Pierce Aff. ¶ 12, Exh. F; Graber Decl. ¶ 11, Exh. E. On May 14, 1987, the Second Circuit dismissed their appeal. Pierce Aff. ¶ 12; Graber Decl. ¶ 11. On November 2, 1987, the Supreme Court denied certiorari. Pierce Aff. ¶ 12; Graber Decl. ¶ 11.

In 1987, the NYCV Board established a new escrow account to receive further payments from Warner Bros. Pierce Aff. ¶ 13; Graber Decl. ¶ 12. On December 10, 1991, prior to a final distribution of the accrued funds, the Supreme Court held that former section 632–a was unconstitutional. *See Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991).

On March 9, 1992, the NYCV Board commenced an interpleader action in the Supreme Court, New York County to determine entitlement to any accrued royalties, which had been forwarded by Warner Bros. to the NYCV Board prior to the invalidation of former section 632–a. Pierce Aff. ¶ 14; Graber Decl. ¶ 13. The state court obtained jurisdiction over eighteen defendants-claimants, including both Heath and Wojtowicz, three victims of Wojtowicz and his former spouse. Graber Decl. ¶ 13. On February 4, 1993, the state court discharged the NYCV Board as stakeholder. Graber Decl. ¶ 13. On June 5, 1995, the state court held, *inter alia*, that Wojtowicz's criminal defense attorneys and his former spouse are entitled to

---

**6.** By order to show cause dated July 28, 1992, Heath moved to "reinstate" this state court action. By decision and order dated October 21, 1993, the Supreme Court, New York County denied the motion to reinstate. Pierce Aff. ¶ 16; Graber Decl. ¶ 20, Exh. G.

the accrued royalties and that Wojtowicz, his criminal defense attorneys, Heath and the New York City Human Resources Administration are entitled to any future royalties. Supplemental Affidavit of Phillip Pierce ("Pierce Supp. Aff.") ¶ 8, Exh. E; Supplemental Declaration of Joel Graber Sworn to May 26, 1995 ("Graber Supp. Decl.") ¶ 12, Exhs. A, B. By decision and order dated June 1, 1995, the Appellate Division, First Department affirmed. *See* Letter from Phillip Pierce dated June 6, 1995; Letter from Joel Graber dated June 8, 1995.[7]

On June 3, 1992, Heath commenced the instant *pro se* action, which the Court must construe liberally and deferentially.[8] *See Morello v. James*, 810 F.2d 344, 346 (2d Cir.1987). In the instant action, Heath generally claims that defendants violated his constitutional rights by applying former section 632–a of the New York Executive Law. Verified Complaint ¶ 1. More specifically, in his first cause of action, Heath claims that Warner Comm. fraudulently induced him to enter into the settlement agreement. *Id.* ¶¶ 18–21. In his second cause of action, Heath claims that the Warner defendants breached the settlement agreement by forwarding accrued royalties to the NYCV Board. *Id.* ¶¶ 22–24. In his third cause of action, Heath claims that the Board defendants violated his rights by retroactively implementing former section 632–a, which has since been held unconstitutional. *Id.* ¶¶ 25–28. In his fourth cause of action, Heath seeks to enjoin the NYCV Board from receiving any future royalties and to recover any accrued royalties held by the NYCV Board. *Id.* ¶¶ 29–32.

7. In the interpleader action, Heath filed a "third-party complaint" against Time Warner and the NYCV Board, making many of the same claims as in the instant action. Graber Decl. ¶¶ 15–18. On February 4, 1993, the state court dismissed the complaint. Graber Decl. ¶ 19.

8. On February 22, 1993, Heath filed an application for the appointment of counsel. By order dated March 15, 1993, the Court granted that application. However, while the Court placed the action on its suspense docket for one year, no counsel accepted the case. Thus, by order dated August 6, 1994, the Court vacated the order granting the appointment of counsel.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986) (discussing standards governing summary judgment).

### A. *The Injunction*

As noted, back in June 1986, Heath was enjoined individually, and on behalf of Wojtowicz, from commencing any further litigation regarding their rights under the settlement agreement without leave of court. In issuing the injunction, the district court exercised its "inherent power and constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions." *In re Martin–Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984); *see also Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983). In this case, while Heath has filed a "Notice of Injunctive Clearance Summarizing Factual and Procedural History," he has failed to comply with all of the terms of the injunction. Accordingly, for that reason alone, the instant action must be dismissed.[9]

### B. *Res Judicata*

In any event, even assuming that Heath had complied with the injunction, the first, second and third causes of action are

9. By the terms of the injunction, Heath' was required to seek leave of court by submitting, *inter alia*, an "Application pursuant to Court Order Seeking Leave to File," a copy of Judge Lowe's memorandum opinion and order, a copy of Judge Lowe's permanent injunction and an affidavit concerning the nature of the case. Graber Decl. Exh. E. Although Heath arguably supplied a proper affidavit, he failed to seek leave of court prior to commencing the instant action and failed to submit the other required materials.

barred under the judicial doctrine of *res judicata.*

 Premised upon considerations of judicial economy and legal certainty, the doctrine of *res judicata* was established to avoid repetitive litigation of the same causes of action. *See Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1232 (2d Cir.1977). Briefly stated, where a cause of action is decided upon the merits by a court of competent jurisdiction, the doctrine precludes litigation of the same cause of action by the same parties or their privies in another action. *See Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Moreover, where a different cause of action is involved, the principle of collateral estoppel precludes litigation of any matters necessarily litigated and determined in the prior proceeding. *See Southern Pacific R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

In this case, the first, second and third causes of action involve the same factual occurrences as the earlier state and federal actions. Under either federal law, which must be applied to the earlier federal court judgments, or New York state law, which must be applied to the earlier state court judgments, the so-called transactional approach to *res judicata* is applicable. *See Winters v. Lavine,* 574 F.2d 46, 57 (2d Cir. 1978); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981). In the earlier state and federal actions, the various courts considered and rejected the claims set forth in the first, second and third causes of action on the merits.

Moreover, the decision of the Supreme Court, which held former section 632–a unconstitutional, does not require a different result. It is well-established that the preclusive effects of a judgment are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *see also Gowan v. Tully,* 45 N.Y.2d 32, 407 N.Y.S.2d 650, 652–53, 379 N.E.2d 177, 179–80 (1978) (citing *Slater v. American Mineral Spirits Co.,* 33 N.Y.2d 443, 354 N.Y.S.2d 620, 623, 310 N.E.2d 300, 302 (1974)).

However, the fourth cause of action sets forth broad allegations concerning the allocation of funds since the invalidation of former section 632–a. In particular, Heath alleges that the Warner defendants continue to forward royalties to the NYCV Board defendants, who continue to implement the unconstitutional statute. These allegations, which could not have been and were not raised in the earlier state and federal actions, are not barred by *res judicata.*

In any event, the fourth cause of action is devoid of factual support, and thus no rational jury verdict on this claim could be sustained. It is undisputed that as of March 3, 1995, the Warner defendants possessed accrued royalties in the amount of $4,301.00, with the movie "Dog Day Afternoon" still producing modest royalties of approximately $2,000 per year. Pierce Supp. Aff. ¶ 7; Graber Supp. Decl. ¶ 11. Since the invalidation of former section 632–a, the Warner defendants have not forwarded any royalties to the NYCV Board. Pierce Supp. Aff. ¶ 4. Moreover, the Warner defendants intend to distribute any accrued royalties, as well as any future royalties, in accordance with the recent state court decision, which was affirmed by the Appellate Division, First Department. *Id.* ¶ 8. At the time of the invalidation of former section 632–a, the NYCV Board possessed accrued royalties in the amount of $16,533.19, which was contained in an escrow account. Graber Supp. Decl. ¶ 10. Since that time, the NYCV Board has neither accepted any royalties nor disbursed any accrued royalties. *Id.* ¶ 11. Furthermore, the Board defendants intend to close the escrow account following payment of the accrued royalties in accordance with the state court decision. *Id.* ¶ 12. No facts have been set forth in response to the motions for summary judgment which raise any triable issue as to these facts.

 In any event, defendants cannot, as a matter of law, be found liable because of their compliance with former section 632–a prior to its invalidation by the Supreme

Court in *Simon & Schuster.* "[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Lemon v. Kurtzman*, 411 U.S. 192, 209, 93 S.Ct. 1463, 1473, 36 L.Ed.2d 151 (1973); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60, 93 S.Ct. 1278, 1310, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring); *Anniston Mfg. Co. v. Davis*, 87 F.2d 773, 780 (5th Cir.1937); *New York Pub. Interest Research Group, Inc. v. Steingut*, 40 N.Y.2d 250, 386 N.Y.S.2d 646, 652, 353 N.E.2d 558, 564 (1976); *Hurd v. City of Buffalo*, 41 A.D.2d 402, 343 N.Y.S.2d 950, 953–954 (4th Dep't 1973). This is especially true since prior to its invalidation by the Supreme Court, former section 632–a was repeatedly upheld by the courts of New York, including its highest court. *See, e.g., Children of Bedford, Inc. v. Petromelis*, 77 N.Y.2d 713, 570 N.Y.S.2d 453, 573 N.E.2d 541 (1991); *In re Johnsen*, 103 Misc.2d 823, 430 N.Y.S.2d 904 (Sup.Ct. Kings Co.1979); *Barrett v. Wojtowicz*, 66 A.D.2d 604, 414 N.Y.S.2d 350 (2d Dep't 1979).

### D. *Rule 25(a) Substitution*

█ As noted, defendant Steven Ross passed away during the pendency of this action. Where, as here, a party dies during the pendency of a federal civil action, a proper party may be substituted for the deceased within 90 days of the filing and service of a suggestion of death. Fed.R.Civ.P. 25(a)(1); *see also Grandbouche v. Lovell*, 913 F.2d 835, 836 (10th Cir.1990). On January 11, 1993, counsel for Ross filed a suggestion of death upon the record and served copies upon Heath and counsel for the other defendants. Despite that notification, Heath failed to file a motion for the substitution of a proper party in place of the decedent. Accordingly, the claims against Ross must be dismissed. *See, e.g., Zeidman v. General Accident Ins. Co.*, 122 F.R.D. 160, 161–63 (S.D.N.Y.1988); *National Equip. Rental v. Whitecraft Unlimited, Inc.*, 75 F.R.D. 507, 510 (E.D.N.Y. 1977).[10]

**10.** Although defendant Grobe also died during the pendency of the instant action, counsel for

### CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment shall be and hereby are granted. The Clerk of the Court is hereby directed to enter judgment for defendants and close the above-captioned action.

It is **SO ORDERED.**

Grobe failed to file a suggestion of death on the record.