OPINION OF THE COURT
Harvey M. Sklaver, J.
In this proceeding brought by the Division for Youth for an extension of placement (Family Ct Act § 355.3) the respondent moved for an order dismissing the underlying delinquency petition. That petition, which was filed on March 12, 1993, charged the respondent with various counts of drug possession. Subsequently, on May 20, 1993, he admitted to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03) and on June 25, 1993, he was placed with the Division for Youth for up to 12 months (Family Ct Act § 353.3). A notice of appeal was filed but the appeal was not perfected. The respondent now asserts that the delinquency petition was jurisdictionally defective in that the police laboratory report which was attached to the petition and which confirmed the substance tested to be cocaine was not a non-hearsay statement. The report was signed by the chemist who stated therein that 'T hereby certify that the foregoing report is a true and full copy of the original report made by me. False statements made herein are punishable as a Class 'A’ misdemeanor pursuant to section 210.45 of the Penal Law”.
To succeed in his motion the respondent must establish two points, each of which is independent of the other. He must establish that the police laboratory report is a nonadmissible hearsay document and then further establish that the recent cases declaring it to be such are to be applied retrospectively to permit vacatur of the orders which had become final.
I
With respect to the legal sufficiency of the laboratory report the court notes that for many years the New York City Police Department has employed, in drug and firearm cases, a form of laboratory report similar to the one under consideration in this case and thousands of those reports, if not tens of thousands, routinely have been received in Grand Jury proceedings (CPL 190.30 [2]), have served as the corroboration necessary to convert a misdemeanor complaint to an information (CPL 170.65 [1]) and have satisfied the requirements of Family Court Act § 311.2, for a sufficient petition. Recently, however, the courts have begun to look more closely at these reports *153 and have discerned three distinct versions of the maker’s certification. One version, addressed in Matter of Rodney J. (83 NY2d 503 [a firearm case]) provides that the person signing the report attached to the petition certifies that said report is a true copy of the original report, without any indication of who, if anyone, signed the original report. The Court held that report to be a hearsay document. A second version which has come to the attention of this court is to the effect that the person signing the report attached to the petition certifies that such person actually conducted the test and that the report sets forth the results of the test. This version was discussed in passing in Matter of Enriquillo S., a drug case (NYLJ, May 20, 1994, at 22, col 6), the court indicating that report to be nonhearsay (see also, Matter of Rodney J., supra). A third version, similar to the one employed in this case, provides that the person signing it is the person who made the original report of which the one being certified is a true copy. This version was the one under consideration in Matter of Enriquillo S. (supra), where the court held it to be hearsay. Since that last-cited decision was of a court of coordinate jurisdiction this court is not bound by it and is free to be guided by its own analysis. However, after the submission of the motion under consideration, counsel for both the presentment agency and the respondent informed the court that this very issue is presently the subject of an appeal to the Appellate Division, First Department, and consequently, no useful purpose would be served by this court’s addressing the issue. Therefore, for purposes of what follows herein this court will assume that the Appellate Division will agree with the conclusion reached in Matter of Enriquillo S. (supra).
II
This court having determined that it will treat the petition as facially insufficient under the Rodney J. line of cases, the next question is whether the rule enunciated in that case should be applied retroactively so as to require vacatur of the prior orders and dismissal of the proceeding. It is "Hornbook law” that a final order or judgment may not be attacked, either directly or collaterally, if the court which made it had both subject matter jurisdiction and jurisdiction over the person (73 NY Jur 2d, Judgments, § 320). Equally clear is that if the court lacked either of them the judgment or order is a nullity and may be attacked by any interested person at any time (Royal Zenith Corp. v Continental Ins. Co., 63 NY2d 975). *154 Thus, when the Court in Matter of Detrece H. (78 NY2d 107, 109) wrote that "[a] juvenile delinquency petition must contain 'nonhearsay allegations * * * establishing] * * * every element of each crime charged and the respondent’s commission thereof ’ (Family Ct Act § 311.2 [3]). Any petition which does not contain such factual allegations is both legally insufficient and jurisdictionally defective (see, Family Ct Act § 311.2; Matter of David T., 75 NY2d 927)”, did the Court of Appeals mean that the defective petition deprived the trial court of subject matter jurisdiction? That question will be addressed herein. Further, if, despite the defective petition, this court had subject matter jurisdiction to make the orders it made should the court now discretionally vacate those orders because the subsequently announced Rodney J. rule served to render the petition defective? That question also will be addressed herein.
Ill
It is clear that if this court lacked subject matter jurisdiction the orders which it made must be vacated and the underlying petition dismissed.[1] However, for purposes of determining whether the court had subject matter jurisdiction the word "jurisdiction” is used in the classical sense of the court’s competence to determine the particular kind of dispute at issue. Thus, in Lacks v Lacks (41 NY2d 71, 74-75) the Court wrote:
"The confusion, if there be confusion, starts with a line of decisions dating back to the last century and continuing into the present in which this court has said with less than perfect meticulousness that 'jurisdiction’ of New York courts in matrimonial cases is limited to the powers conferred by statute * * * Jurisdiction is a word of elastic, diverse, and disparate meanings (see Nuernberger v State, 41 NY2d 111).
"A statement that a court lacks 'jurisdiction’ to decide a case may, in reality, mean that elements of a cause of action are absent * * * Similarly, questions of mootness and standing of parties may be characterized as raising questions of subject matter jurisdiction * * * But these are not the kinds of judicial infirmities to which CPLR 5015 (subd [a], par 4) is *155 addressed. That provision is designed to preserve objections so fundamental to the power of adjudication of a court that they survive even a final judgment or order * * *.[2]
"In Thrasher v United States Liab. Ins. Co. (19 NY2d 159, 166), this court, in discussing subject matter jurisdiction, drew a clear distinction between a court’s competence to entertain an action and its power to render a judgment on the merits * * * Absence of competence to entertain an action deprives the court of 'subject matter jurisdiction’; absence of power to reach the merits does not.” (Citations omitted.)
This principle is easy to state and easy to understand but often difficult to apply to the facts of a given case. At one end of the spectrum of cases we find those in which the court clearly has no competence to entertain the action (e.g., those preempted by Federal law, People v Trans World Airlines, 147 Misc 2d 697 [airline regulation]; Young v Sheet Metal Workers’ Intl. Assn. Prod. Workers Welfare Fund, 112 Misc 2d 692 [ERISA]; Harris v Hirsch, 83 NY2d 734 [Railway Labor Act]) while at the other end we find those in which it simply cannot reach the merits (e.g., failure to allege a condition precedent required by statute, Katz Park Ave. Corp. v Olden, 158 Misc 2d 541; Golub v Frank, 65 NY2d 900 [notice to the tenant]). Between those extremes lies a large group of cases which require a court to analyze the enabling Constitution and statutes with almost surgical precision in order to reach the correct conclusion (compare, People v Boston, 75 NY2d 585, with People v Connor, 63 NY2d 11).
Subject matter jurisdiction has been defined as the "power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question”. That hoary statement from Hunt v Hunt (72 NY 217, 229) is still quoted (see, Matter of Stanley R., 147 AD2d 284, 288). Competence of the Family Court emanates from New York Constitution, article VI, § 13, cl (b) which gives the court jurisdiction over proceedings originated there, including juvenile delinquency ones, in the manner provided by law, i.e., if and as the Legislature shall designate. Based on this constitutional authorization the Legislature enacted the Family Court Act which, in section 115 (a) (vii), gives Family Court jurisdiction over those proceed *156 ings. These provisions are the source of the court’s power to adjudicate. Article 3 of the Family Court Act establishes rules by which that adjudication is to proceed. Section 301.1 of the Family Court Act provides in part: "The purpose of this article is to establish procedures in accordance with due process of law (a) to determine whether a person is a juvenile delinquent and (b) to issue an appropriate order of disposition for any person who is adjudged a juvenile delinquent”. Failure to comply with the article 3 "procedures” may require dismissal of the proceeding (e.g., Matter of Frank C., 70 NY2d 408; Matter of Robert S., 192 AD2d 612) but such dismissals are based on procedural irregularities and not on want of subject matter jurisdiction. This distinction underlay the Court’s analysis in Matter of Tommy C. (182 AD2d 312). There, the petition failed to set forth any nonhearsay factual allegations and, on the respondent’s motion, the petition was dismissed 44 days after the initial appearance. Subsequently, 80 days later, the presentment agency filed a second petition charging the respondent with the same acts as in the first petition. He then moved to dismiss on speedy trial grounds (Matter of Frank C., supra). In affirming the order granting the motion the Court adopted the "single criminal action” concept embodied in CPL 1.20 (17) and articulated in People v Lomax (50 NY2d 351, 356), and held that since more than 60 days had elapsed since the initial appearance in the first case the second one was required to be dismissed also. Implicit in that analysis is that the Family Court had subject matter jurisdiction over the first proceeding for, if not, everything which had occurred in the first case would have been a nullity (Royal Zenith Corp. v Continental Ins. Co., 63 NY2d 975, 977, supra) and the second petition would not have been dismissed since the initial appearance would have occurred when the respondent appeared on the second petition. The Court’s reliance on the single criminal action concept reflects its understanding that Family Court had subject matter jurisdiction over the first proceeding. This same analysis may be applied with greater impact to Matter of Edward B. (80 NY2d 458). There, the petition was facially sufficient but had a latent defect which revealed itself during the trial. Addressing this point, the Court wrote (at 462): "Inasmuch as the claimed defect was not apparent from the face of the accusatory instrument, it was not the kind of nonwaivable 'jurisdictional’ flaw that this Court may consider even in the absence of a timely objection (cf., Matter of David T., [75 NY2d 927]; People *157 v Alejandro, 70 NY2d 133). Accordingly, since the issue was not timely raised before the hearing court, the merits of this aspect of respondent’s claim cannot be reviewed in this Court.” It follows that if Family Court, as the hearing court, had lacked subject matter jurisdiction, the petition would have been dismissed because the facially sufficient petition could not create that jurisdiction (see, 28 NY Jur 2d, Courts and Judges, § 183, and the plethora of cases cited therein). In this regard, the Court’s reference to People v Alejandro (70 NY2d 133) is enlightening as to the meaning of the phrase "nonwaivable jurisdictional defect”. There the Court wrote (at 136): "Conceding the facial insufficiency of the information, the significant question is whether the defect is jurisdictional. We conclude that an information which fails to contain nonhearsay allegations establishing 'if true, every element of the offense charged and the defendant’s commission thereof (CPL 100.40 [1] [c]) is fatally defective”. However, in footnote 2 (at 138) the Court recognized that CPL 170.65 (3) permits a defendant to waive prosecution by information and proceed to trial on the misdemeanor complaint (see, People v Connor, supra). Thus, if by use of the words "jurisdictional defect” the Court meant absence of subject matter jurisdiction then it could not have sustained the efficacy of CPL 170.65 (3) (compare, People v Boston, supra). Finally, in Matter of Wesley M. (83 NY2d 898), the Court used language which clarifies any misapprehensions as to the legal impact of a defect in the petition. The Court wrote (at 899): "In order to establish a prima facie case against a juvenile, a petition must contain ' "[n]on-hearsay allegations * * * [that] establish, if true, every element of the offense charged and the [accused’s] commission of the offense” ’ (Matter of Jahron S., 79 NY2d 632, 637; see, Family Ct Act § 312.2 [3]; Matter of Rodney J., 83 NY2d 503). The petition in this case is jurisdictionally defective and must be dismissed as it fails to make out a prima facie case against respondent for criminal possession of a controlled substance”. The Court’s use of the phrase "prima facie case” coupled with the phrase "jurisdictionally defective” indicates that the latter was used in the sense of an element of the crime being absent so that the trial court could not reach the merits of the case, although it did have power to adjudicate that type of case (see quotation from Lacks v Lacks, supra).
The foregoing analysis leads this court to conclude that it had jurisdiction to make the fact-finding and dispositional *158 orders herein. The language in the cases that the defects in the petitions as discussed therein are jurisdictional and nonwaivable means only that the defective petition cannot be amended (Family Ct Act § 311.5 [2]) and that an entirely new proceeding must be started. Consequently, since this court had subject matter jurisdiction it is not required to vacate the orders which had become final.
IV
That this court had subject matter jurisdiction to make the fact-finding and dispositional orders it made does not resolve the matter since the Family Court, like any other court, has the inherent power to vacate or modify its own orders (Matter of Delfín A., 123 AD2d 318, 320).[3] The question here is whether the court should do so in light of the Rodney J. decision (83 NY2d 503, supra). Of primary importance in this regard is the doctrine of res judicata which, subject to exceptions, precludes a person from later attacking an order or judgment which had become final.[4] Thus, in Matter of Gowan v Tully (45 NY2d 32, 36-37) the Court wrote: "It is settled law, however, that '[t]he conclusive effect of a final disposition is not to be disturbed by a subsequent change in decisional law’ * * * The principle applies even when the change heralds a new policy as important as the relative apportionment doctrine evolved in Dole v Dow Chem. Co. * * * That the change in legal doctrine is constitutional in nature does not, automatically, dictate a different result. It may be that where a final adjudication affects 'important ongoing social or political relationships’, a subsequent major change in constitutional doctrine should permit reconsideration of the original claim, at least as to its future effect * * * That possibility need not be addressed, for the situation posited is not presented in this case.” (Citations omitted.)[5] If the change of law is one fundamental to the process of adjudication and a fair trial the court *159 should exercise its inherent power and modify or vacate the earlier order or judgment. In Matter of Arlene "S” (63 Misc 2d 253) the court ordered a new fact-finding hearing after the United States Supreme Court decided, in In re Winship (397 US 358), that the standard in juvenile delinquency cases was proof beyond a reasonable doubt rather than by a preponderance of the evidence, as had been the rule. Similarly, in Matter of Glenn F. (117 AD2d 1013) the Court reversed delinquency findings against two respondents who were represented by the same Law Guardian and there was a possible conflict of interest in the joint representation. Again, in Matter of Yolanda C. (118 AD2d 778) the allocution conducted at the fact-finding hearing was inadequate because the respondent was not comprehensively apprised of her constitutional and statutory rights or the consequences of a waiver thereof. Here, however, this court is not satisfied that the change in law wrought by Matter of Rodney J. (83 NY2d 503, supra) would be a sufficient reason to disregard the res judicata effect of this court’s prior orders, if, indeed, that decision did change the law.[6] Although the petition in the present case contained a hearsay statement the presentment agency was still required to establish at trial, by nonhearsay evidence, that the substance recovered from the respondent was cocaine. The deficiency in the petition was not so fundamental to a fair trial as to justify vacating orders which had become final more than a year ago.
V
For the foregoing reasons, the respondent’s motion to vacate the fact-finding and dispositional orders and to dismiss the petition is denied.

. Whether the respondent’s motion be deemed a collateral attack by way of defense in the extension of placement proceeding or a postjudgment motion under Family Court Act § 355.1 is not material since the principles for determination are the same.

. CPLR 5015 is a more detailed counterpart of Family Court Act § 355.1. However, see IV, infra.

. Family Court Act § 355.1 and CPLR 5015 codify some of the principal grounds on which the courts may exercise that discretion but do not set forth an exhaustive list or in any way limit the power (Matter of Delfín A., supra).

. To be distinguished is the principle illustrated in People v Favor (82 NY2d 254), People v Mitchell (80 NY2d 519) and People v Pepper (53 NY2d 213) that, generally, a case must be decided on the law as it exists at the time of decision. That principle is relevant when the case is still in the direct appeal process and, thus, not applicable here since the fact-finding and dispositional orders had become final.

. In Gowan (supra), the change in decisional law which formed the basis *159 for the case was of constitutional dimension, the United States Supreme Court having previously decided in Elrod v Burns (427 US 347) that the complained of practice violated the First and Fourteenth Amendments of the United States Constitution. However, before Elrod had been decided the petitioners in Gowan had brought an earlier case on the same grounds (Matter of Nolan v Tully, 52 AD2d 295, appeal dismissed 40 NY2d 844). Since the judgment in Nolan had become final the petitioners in Gowan were bound by the doctrine of res judicata.

. Family Court Act § 311.2 was enacted in 1982 and was derived from CPL 100.40 which was enacted in 1970. Neither section has ever been amended with respect to the facial sufficiency requirements. Alternatively, if there was no change in law then counsel’s failure to raise the objection before the orders herein became final is deemed a waiver (Matter of Edward B., 80 NY2d 458, 462, supra).