Jones, J.
In these appeals we confront the question
whether the allowances for particular and additional services to members of the Legislature included in chapter 460 of the Laws of 1975 (the 1975 supplemental budget adopted July 11, 1975) are, in whole or in part, increases prohibited by section 6 of article III of the State Constitution.
An action and a special proceeding are before us. Plaintiffs New York Public Interest Research Group, Inc. (PIRG), and its director, Ross, by a declaratory judgment action against the Senate and Assembly, their members and majority leaders and the Comptroller of the State of New York, seek a determination that all legislators’ allowances for particular and additional services and the legislation identified above, insofar as it provides such allowances, are unconstitutional. By way of coercive, implementing relief they demand an injunction barring payment of such allowances to any member of the Senate or Assembly and an order requiring any member who has received such an allowance to return it to the State; additionally they seek reimbursement of reasonable attorney fees. Petitioners Civil Service Employees Association, Inc. (CSEA), and its president, Wenzl, proceeding under CPLR article 78 against the State Comptroller alone, request a judgment dedaring the 1975 statutory enactment unconstitutional insofar as it increases allowances for certain officers of the houses of the Legislature over the allowances provided in chapter 992 of the Laws of 1974 (the 1974 supplemental budget) and insofar as it provides allowances for legislative offices for which no allowances were authorized in the 1974 supplemental budget; they seek an order enjoining payment of the challenged allowances and requiring the Comptroller to obtain restitution of any such allowances which have been paid by deducting the amounts from payments hereafter to become due to the recipients.[1]
In each of these cases the court of original jurisdiction *255 granted all the relief sought. The Appellate Division modified the judgments by striking the provisions directing restitution of overpayments and by striking the award of counsel fees in the PIRG action. All parties have appealed to this court, with the exception of CSEA which does not challenge the deletion of the restitution provision.
A brief historical review will be helpful.
From the enactment of the Constitution of 1874 until the adoption of section 6 of article III of the Constitution in its present form, the amount of compensation paid to members of the Legislature was fixed by the Constitution which also provided an amount for travel expenses.[2] Details of the method of disbursement were defined by statutory enactments which provided generally for in-session payments at a per diem rate for the number of days that had expired, up to a stated maximum, with payment of the balance on final adjournment.[3] These details were changed from time to time and were augmented by a limitation on the frequency of in-session payments.[4]
The adoption of present section 6 of article III, effective January 1, 1948, reflected a substantial change in this arrangement.[5] The Constitution no longer fixed the amount of *256 compensation but provided that each member should receive a like annual salary to be fixed by law. Thus there descended to the Legislature the authority thereafter to define the amount as well as the details of salary payment. In addition, the Constitution expressly authorized, virtually for the first time, payment to legislators of allowances for particular and additional services over and above salary.* **[6] Authority to determine the amount of such allowances—described as "which may be fixed by law”—was also delegated to the Legislature. Additionally, included in the section as a restriction on the newly conferred legislative authority to fix salaries and allowances was the following critical sentence which gives rise to the present litigation: "Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he shall have been elected,[7] nor shall he be paid or receive any other extra compensation.”
In 1948 the Legislature amended section 5 of the Legislative Law to fix the amount of members’ salaries[8] and provided current year allowances for holders of designated legislative offices by inclusion of appropriations therefor in the supplemental budget.[9] Unlike the course pursued in exercising the newly conferred authority to fix legislative salaries, no general law provision was enacted with respect to additional allowanees. Thereafter, the same procedure of providing allowances for the current year by inclusion of appropriations therefor in budgetary legislation adopted near the close of the legislative session has been followed annually without exception through the enactment of chapter 460 of the Laws of 1975, that here *257 under attack. From time to time the appropriated allowances have exceeded allowances allocated to the same officer in the preceding year and have sometimes represented new allowances for officers not previously benefited. It is this practice of the Legislature, consistently followed, of providing allowances by inclusion in current budgetary legislation alone, without enactment of sanctioning general law with prospective effect only, which gives rise to the challenges now before us addressed to the 1975 legislation.
With that historical background, we turn to a consideration of the present challenges. Our deliberations must begin with an awareness of the respect due the legislative branch, which finds articulation in the precept that "as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the courts to the contrary” (Montgomery v Daniels, 38 NY2d 41, 54). Even more important in this instance is respect for the basic polity of distribution of powers in our State government, and the exercise of a proper restraint on the part of the judiciary in responding to invitations to intervene in the internal affairs of the Legislature as a co-ordinate branch of government—"it is not the province of the courts to direct the legislature how to do its work”. (People ex rel. Hatch v Reardon, 184 NY 431, 442; cf. Norwick v Rockefeller, 33 NY2d 537.)
Critical to our evaluation of plaintiffs’ contentions is a determination of the meaning to be ascribed to the word "fixed” as it appears in section 6 of article III. Curiously, though as predicates for differing conclusions, both PIRG, on the one side, and the legislative members and officers and the State Comptroller, on the other, make the same assertion— that, by reason of the fact that only annual budgetary appropriations have been the basis of allowances, without any underlying general law, and, since—it is contended—such appropriations have expired by the end of the year in which they are enacted, at the beginning of each successive legislative session it must be deemed that there are then no allowances "fixed”. PIRG’s conclusion is that, with no allowances "fixed”, any allowances enacted for legislators then in office must be held to be an increase during the term for which they were elected and thus unconstitutional. At the other end, the legislative members and the Comptroller urge that, since there are no allowances "fixed” at the opening of the session, the first budgetary appropriation allowance made in a session *258 for each office so benefited must be regarded as an "initial” allowance, as to which there is available no comparison and thus no increase or decrease.
In interpreting the constitutional language, several factors will be useful to us. First, we examine the apparent objectives of the provision in which the questioned phrase appears (Association for Protection of Adirondacks v MacDonald, 253 NY 234, 238). Here, it may be assumed that the prohibition against increases and decreases in legislators’ compensation and emoluments during their terms of office would serve two salutary purposes—(1) to avoid a conflict of interest by removing from legislators the authority to vote themselves financial benefits at the expense of the public treasury, and (2) to forestall the possibility of manipulation of legislators’ votes by promises of reward or threats of punishment effectuated through changes in salaries or allowances.
Next, we look with advantage to circumstances and practices which existed at the time of the passage of the constitutional provision (Sweet v City of Syracuse, 129 NY 316, 330). Specifically, we note that, prior to 1947, the Legislature had made it a regular practice to grant allowances to certain of its officers by inclusion of annual appropriations in supplemental budgets.
Finally, we observe the conduct of the Legislature as it exercised its authority under section 6 in the years following January 1, 1948. "The weight to be given to contemporaneous construction is well expressed by Marcy, J., in People v. Green (2 Wend., 274). He says: 'Great deference is certainly due to a legislative exposition of a constitutional provision, and especially when it is made almost contemporaneously with such provision, and may be supposed to result from the same views of policy, and modes of reasoning which prevailed among the framers of the instrument propounded’ ” (People ex rel. Joyce v Brundage, 78 NY 403, 406). As has been noted, since 1948 the legislative procedure has not varied; allowances have continued to be granted solely by adoption of annual appropriations.
Bearing in mind these three factors, and examining again the language of section 6 in its entirety, we must reject the view that allowances for additional services may not be said to be "fixed” at the beginning of a legislative session within the meaning of section 6 because they were provided only by supplemental budgetary appropriation in the preceding year. *259 Such constricted vision is practically unrealistic and too narrow. Nothing in section 6 contemplates that because at the opening of any legislative year no allowance has then been "fixed by law” for purposes of appropriation and payment, it must be deemed that no allowance has then been "fixed by law” for purposes of determining whether there has been an increase or decrease within the scope of the constitutional proscription. In face of the continuous practice—both before and after enactment of section 6—of providing allowances by budgetary appropriation alone, and deferring to the legislative choice of method by which its authority shall be exercised, we recognize allowances so provided as "fixed by law” for the purpose of applying section 6. The fact that the appropriations are annual only and that they may have been paid in full before the end of the year in which they were adopted and thus have been exhausted as a predicate for a claim against public funds, does not diminish their status as allowances "fixed by law”. On the contrary, we hold that they retain a continuing vitality as establishing the effective level against which subsequent appropriations for the same office shall be compared to determine whether there has been a prohibited increase or decrease during the term for which the officers were elected. This same concept is embodied in the final sentence of section 6: "Members shall continue to receive such salary and additional allowance as heretofore fixed and provided in this section, until changed by law pursuant to this section.”
Turning then to the application to chapter 460 of the Laws of 1975 of what we perceive to be the proper interpretation of the constitutional prohibition, we conclude that, insofar as allowances there provided were equal in amount to allowances included in appropriations adopted in 1974 for members serving in the same offices or special capacities, there was no violation of the proscription against increases or decreases during members’ terms of office. To the extent that allowances there provided exceeded 1974 appropriations for like offices or represented allowances for offices for which there had not been appropriations in 1974, they were unconstitutionally enacted.[10] So long as the Legislature chooses to fix allowances *260 by annual budgetary appropriations, rather than by enactment of a general law provision with prospective effect only, deviation from prior allowances is foreclosed. In this connection it should be noted that the explicit, single instance constitutional exclusion from the ban against increases and decreases in allowances contained in section 6 when enacted (see n 7) confirms the view that changes from year to year in annual appropriations were thought to involve potential increases or decreases within the new constitutional prohibition. The fact that the Legislature after the expiration of the express exception, nevertheless continued regularly to alter allowances through annual appropriations cannot give validity to the violation of the clear and explicit prohibition against increase or decrease.
The detailed correlations between recipients of allowances in different years are issues for legislative attention. We observe that with only a few exceptions (e.g., Legislative Law, §§ 6, 7, 27, 29), the officers and committees of the two houses of Legislature are created by rule of each house at the opening of each legislative term. That this has been the uniform practice serves to confirm our conclusion that determinations as to identity of offices benefited is a legislative prerogative, exercised by that body "in the discharge of its own functions and peculiar duties” and should normally be free from interference by other branches of government (Matter of Gottlieb v Duryea, 38 AD2d 634, affd 30 NY2d 807, cert den 409 US 1008). However, since implementation of the language of section 6 and procurement of the favorable consequences to the public good to be obtained by its application require that the prohibition against allowance alterations during a term of office be applied to each allowance individually, we reject the suggestion advanced by the legislators that only comparisons of total, gross appropriations for allowances need be made. If this suggestion were adopted and changes in individual allowances within an unchanging total were to be permitted, the possibility of misuse of increases or decreases to influence legislative action would remain unchecked.
Since, as we conclude, some of the allowances provided in chapter 460 of the Laws of 1975 are unauthorized in whole or in part by virtue of section 6, we address and reject the *261 demand that payments of such unauthorized allowances be restored either by reimbursement or withholding. In denying restitution we accept the rationale expressed by the Appellate Division—that restitution of moneys received under a statute subsequently declared to be unconstitutional is not always required (Hurd v City of Buffalo, 41 AD2d 402 [wherein the explanation for such result is well stated], affd 34 NY2d 628), that the funds here disbursed—incident to the performance of essential legislative responsibilities—were not for an unconstitutional purpose but were merely improperly authorized, and that "equitable interests of fairness and justice” mandate that no reimbursement be demanded from the recipients who, in good faith and supported by long-continued practice, relied on the disbursements as authorized and proper.
As a corollary, we agree with the Appellate Division’s deletion of the award of attorney fees in the PIRG action. Section 123-g of the State Finance Law, which is a part of newly enacted article 7-A authorizing citizen-taxpayer actions, requires that such fees when allowed be paid only from the fund established under section 123-h and only to the extent of money there available. The present record fails to demonstrate that any such fund in fact exists or, if existing, the amount of money, if any, contained therein. Moreover, the allowance is a discretionary one and we perceive no ground for disturbing the discretion exercised by the Appellate Division as a matter of law.
In these appeals we identify no other issues as tendered by the pleadings or the decisions below, and therefore do not reach the other issues addressed on brief or in oral argument.
Accordingly, in sum, we hold that the Constitution lays no constraint on the authority of one Legislature by enactment of general law to make provision prospectively for allowances to be received by the officers and members of the two houses during a succeeding legislative term or terms. On the other hand if the Legislature elects to continue its present practice of providing current allowances by annual appropriation legislation alone, the strictures of the Constitution mandate that such allowances be maintained at prior effective levels without increase, decrease or addition.
The orders appealed from should be modified to declare that chapter 460 of the Laws of 1975 is unconstitutional to the extent that individual allowances for particular and additional services thereby fixed exceeded allowances allocated to the *262 same offices by chapter 992 of the Laws of 1974 or represented allowances to offices not included in the 1974 legislation.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
In each case: Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. Because a declaratory judgment action, rather than an article 78 proceeding, is the appropriate vehicle for challenging constitutionality of a legislative enactment (Matter of Kovarsky v Housing & Development Admin, of City of N. Y., 31 NY2d 184, 191-192), we convert this case to an action for a declaratory judgment pursuant to CPLR 103 (subd [c]) and proceed to a consideration of the merits.

. (Constitution of 1821, art I, § 9; Constitution of 1846, art III, § 6, as amd 1874; Constitution of 1894, art III, § 6, as amd 1927; Constitution of 1938, art III, § 6.)

. (Legislative Law, § 5.)

. (E.g., L 1892; L 1911, ch 618; L 1928, ch 5; L 1945, ch 721; L 1947, ch 281.)

. The full text of the section as approved in 1947 is:
"[Compensation and traveling expenses of members.]
“§ 6. Each member of the legislature shall receive for his services a like annual salary, to be fixed by law. He shall also be reimbursed for his actual traveling expenses in going to and returning from the place in which the legislature meets, not more than once each week while the legislature is in session. Senators, when the senate alone is convened in extraordinary session, or when serving as members of the court for the trial of impeachments, and such members of the assembly, not exceeding nine in number, as shall be appointed managers of an impeachment, shall receive an additional per diem allowance, to be fixed by law. Any member, while serving as an officer of his house or in any other special capacity therein or directly connected therewith not hereinbefore in this section specified, may also be paid and receive, in addition, any allowance which may be fixed by law for the particular and additional services appertaining to or entailed by such office or special capacity. Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he shall have been elected, except once by law enacted prior to April first, nineteen hundred forty-eight, and relating only to service after its enactment; nor shall he be paid or receive any other extra compensation. The provisions of this section and laws enacted in compliance therewith shall govern and be exclusively controlling, according to their terms. *256 Members shall continue to receive the same salary and additional allowance as heretofore fixed and provided in this section, until changed by law pursuant to this section.”

. Additional compensation of $1 per day to the Speaker of the Assembly had been provided by section 6 of article III of the Constitution of 1846; this was omitted however in the Constitution of 1874.

. Language that excepted legislation enacted prior to April 1, 1948 appeared at this place in the section as originally adopted. Such provision, having been exhausted, was deleted by amendment effective January 1, 1965.

. (L 1948, ch 20.)

. At that time and until 1965 the appropriations were designated as "in lieu of expenses”, language which had been used for appropriations made in years prior to the explicit constitutional authorization for allowances for additional services effective January 1, 1948 and which is the source of the popular appellation "lulus”. Commencing in 1965 the appropriations were thereafter designated as "for particular and additional services”.

. Not surprisingly, no claim is asserted in the present litigation that an allowance contained in chapter 460 at a figure less than the comparable allowance in the 1974 supplemental budget or omitted entirely from chapter 460 represents an invalid decrease in violation of section 6. We therefore address only the unconstitutionality of *260 increases reflected in the 1975 legislation—whether by enlargement of the amount or by inclusion of an allowance for an office not previously benefited.