OPINION OF THE COURT
Richard D. Huttner, J.
The petitioners, by order to show cause, commenced this hybrid CPLR article 78/declaratory judgment action seeking a judgment: (1) declaring that chapter 635 of the Laws of 1998 is unconstitutional and violative of certain provisions of the New York State and United States Constitutions; (2) declaring that *644 certain actions of respondent George E. Pataki, as Governor of the State of New York, violate various provisions of the New York State and United States Constitutions; and (3) granting a permanent injunction restraining Governor Pataki and respondent H. Carl McCall, as Comptroller of the State of New York, from withholding the salaries and salary checks of the individual members of the New York State Legislature.
Respondents Governor Pataki, Comptroller McCall and the State of New York cross-moved for an order: (1) pursuant to CPLR 401 and 1003, joining Arthur J. Roth, the Acting Commissioner of the New York State Department of Taxation and Finance, as a respondent in this proceeding; and (2) pursuant to CPLR 510 and 511, changing venue of this proceeding to Albany County, New York.
On April 27, 1999, this court, inter alia, granted the respondents’ motion to join Commissioner Roth as a necessary party. A stipulation was thereafter entered into by the parties, in open court, pursuant to which the petitioners agreed to the dismissal, with prejudice, of all claims against Governor Pataki, Comptroller McCall and Commissioner Roth, as well as all requests for preliminary and permanent injunctive relief, and the caption is amended accordingly. This court thereafter instructed the parties that the motions before it would be treated as summary judgment motions and granted the parties additional time to submit further papers.
The sole issue presently remaining before this court is whether chapter 635 of the Laws of 1998 (to be referred to herein as chapter 635) passes constitutional muster.
The petitioners are all members of the New York State Legislature. Petitioners, Senator Thomas Duane, and Assembly members Michael Cohen and Lena Cymbrowitz, are newly elected legislators who, having not been sworn in until January 1999, did not participate in the vote for chapter 635. The remaining petitioners, members of the Assembly James F. Brennan, Barbara Clark, Jeffrey Dinowitz, David Gantt, Richard N. Gottfried, Alexander B. Grannis, Rhoda S. Jacobs, Felix Ortiz and Albert Vann, and Senators Efrain Gonzalez, Jr. and Velmanette Montgomery, have all served several terms in the Legislature and all voted against chapter 635. The petitioners claim that they have a constitutional right to be paid for their services which may not be defeated by any State law or executive action. All the petitioners submit affidavits delineating the financial hardships that they, and in some cases their families, are suffering as the result of the withholding of their salaries.
*645 On December 1, 1998, the New York State Assembly passed Assembly Bill A 11464 (A 11464) which amended Legislative Law § 5 to, inter alia, raise the salaries of the members of the Legislature. The New York State Senate passed A 11464 the following day and Governor Pataki signed the bill into law on December 18, 1998 (L 1998, ch 630). The salary increase became effective on January 1, 1999, the beginning of the next legislative term. Also on December 18, 1998, the Assembly and the Senate passed Senate Bill S 7880 (S 7880) which provided that if the State budget was not enacted and approved by the State Comptroller by the start of the fiscal year, the salaries of the legislators would be withheld until a budget is enacted. Governor Pataki signed S 7880 into law on December 18, 1998 as chapter 635 of the Laws of 1998.
Chapter 635, § 1 provides, in pertinent part, that the legislators’ salaries “shall be payable in twenty-six bi-weekly installments provided, however, that if legislative passage of the budget as defined in [Legislative Law § 5 (3)] has not occurred prior to the first day of any fiscal year, the net amount of any such bi-weekly salary installment payments to be paid on or after such day shall be withheld and not paid until such legislative passage of the budget has occurred whereupon biweekly salary installment payments shall resume and an amount equal to the accrued, withheld and unpaid installments shall be promptly paid to each member.”
The petitioners maintain that chapter 635 violates article III, § 6 of the New York State Constitution, and the separation of powers doctrine. The respondents argue that chapter 635 is consistent with the letter and spirit of article III, § 6 of the New York State Constitution, and does not violate the doctrine of separation of powers.
It is undisputed that the passage of a timely budget is a laudable, if not a necessary goal in order for the government to conduct its business in a proper and timely manner. The petitioners argue, however, that the chapter 635 pay suspension constitutes economic duress such that it threatens their independent judgment with respect to voting a proposed budget. Petitioners contend that they are placed in the untenable position of either surrendering their conscientiously held beliefs in order to support their families and to receive necessary and in some cases urgent medical care, or, to the detriment of themselves and their families dependent upon their support, refuse to capitulate on a budget they conscientiously believe unsatisfactory. The affidavits of eight plaintiff legisla *646 tors indicate that their legislative salaries are their sole source of income. The affidavits of six legislators indicate that their legislative salaries are a significant portion of their income. One petitioner who is HIV positive and requires medical care which is not covered by insurance receives his sole income from his legislative salary. Another legislator whose sole income derives from his legislative duties has a child with cerebral palsy. The havoc created by chapter 635 is real and impacts so adversely upon petitioners as to force a choice between their sworn duties to their constituents and their familial obligations. Legislators should not properly have to make that choice.
This court is cognizant of the precept cited in New York Pub. Interest Research Group v Steingut (40 NY2d 250, 257), that “ ‘as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the courts to the contrary’ ” (Montgomery v Daniels, 38 NY2d 41, 54), and the following discussion is undertaken in recognition of this. Our State Constitution, as does the Federal Constitution, allocates powers among three coordinate and coequal branches of government. (NY Const, art III, § 1; art IV, § 1; art VI.) In Matter of County of Oneida v Berle (49 NY2d 515, 522), the Court of Appeals, discussing the balance of powers doctrine, aptly observed: “Extended analysis is not needed to detail the dangers of upsetting the delicate balance of power existing among the three [branches of government], for history teaches that”a foundation of free government is imperiled when any one of the coordinate branches absorbs or interferes with another. ‘It is not merely for convenience in the transaction of business that they are kept separate by the Constitution, but for the preservation of liberty itself, which is ended by the union of the three functions in one man, or in one body of men. It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others’ (People ex rel. Burby v Howland, 155 NY 270, 282; see Matter of Nicholas v Kahn, supra, at pp 30-31).” The State Constitution also sets forth the process by which budget matters are dealt with by the legislative and executive branches (NY Const, art VII, §§ 2, 4) and, in New York State Bankers Assn. v Wetzler (81 NY2d 98, 102), the Court of Appeals held that judicial review is proper with respect to budgetary issues: “[T]he budgetary process is not always beyond the realm of judicial consideration and * * * the ‘courts will always be available to resolve *647 disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government’ * * * [emphasis added].” (Quoting Saxton v Carey, 44 NY2d 545, 551.)
In the debate preceding passage of chapter 635, Senator Franz Leichter observed that this law “in effect, would give a sledgehammer to the Governor to force the Legislature to enact a budget that the Legislature may think is not in the interests of the people of the state of New York and to do it by saying, You will not be paid. Your salary will be deferred unless you agree to the Governor’s budget.” (Transcript of Senate Debate on Bill S 7880, at 6623-6624.) He further remarked that chapter 635 “erodes the authority, the responsibility of this Legislature.” (Transcript, op. cit., at 6628.) Indeed, the Court of Appeals previously recognized the psychological effect of this kind of legislation in New York Pub. Interest Research Group v Steingut (supra, at 258) where, in discussing the prohibition against increases and decreases in legislators’ compensation and emoluments during their terms of office, it stated that one of the salutary goals of such prohibition was “to forestall the possibility of manipulation of legislators’ votes by promises of reward or threats of punishment effectuated through changes in salaries or allowances.” Chapter 635 flies in the face of that prohibition. By enacting chapter 635, those legislators who voted in favor improvidently and unconstitutionally incapacitated the Legislature from performing its duty as a representative body. The natural and intended consequence of chapter 635 is to coerce passage of a timely budget by the infliction of personal financial hardship upon some legislators. This encroaches upon the independence of the legislators and is, therefore, violative of article III, § 6 of the New York State Constitution and the separation of powers doctrine. When even one legislator, by dint of economic circumstance, is coerced into passing a budget that may require him or her to sacrifice conscientiously held beliefs, then the entire process is tainted. This strikes at the very heart of our republican form of government wherein all legislative power is derived from the People. (McKinney’s Cons Laws of NY, Book 1, Statutes § 15.) The law impermissibly tips the fragile balance of powers that is the keystone of our system of government by threatening to impose on the Legislature a budget that is not the product of thoughtful deliberation and debate. To place any legislator or anyone in any branch of government under undue economic pressure in exercising his or her judg *648 ment, while expecting that person to act in accordance with his or her oath of office, is illogical, unsound, and unconstitutional. The withholding of pay is palpably coercive and manifestly inhibits legislators from performing their function as an independent branch of government.
Without reaching the other arguments raised by petitioners, this court holds chapter 635 of the Laws of 1998 unconstitutional in that it violates the separation of powers doctrine and article III, § 6 of the New York State Constitution.