Smith, J.
(dissenting). Because I believe that chapter 635 of the Laws of 1998 violates the State constitutional guarantee that “[e]ach member of the legislature shall receive for his services a like annual salary, to be fixed by law” (NY Const, art III, § 6), I dissent and vote to affirm the order of the Supreme Court (180 Mise 2d 643).
On December 1, 1998, the New York State Assembly passed legislation (Assembly Bill A 11464) to amend Legislative Law *18 § 5 to raise the salaries of the members of the Legislature.[1] The bill raised the annual legislative salary by 38% from $57,500 to $79,500. It passed the State Senate the following day. Although passed by the Legislature and delivered to the Governor, the Governor withheld signature of the bill until the Legislature also passed and delivered to him Senate Bill S 7880. This latter bill provided that if the State’s budget was not enacted and approved by the State Comptroller by the start of each fiscal year (April 1), the net salaries of the Legislature would be withheld by the Comptroller until a budget was enacted.
On December 18, 1998, the Legislature passed Senate Bill S 7880, and, on that same day, the Governor signed both bills into law (L 1998, ch 630; L 1998, ch 635 [hereinafter collectively referred to as “Chapter 635”]). The 38% legislative salary increase went into effect on January 1, 1999, the first day of the succeeding legislative term.
Prior to the enactment of Chapter 635, Legislative Law § 5 (1) made Legislators’ salaries unconditionally payable in 26 biweekly installments. Chapter 635 amended Legislative Law § 5 (1) to currently provide that Legislators’ salaries:
“shall be payable in twenty-six bi-weekly installments provided, however, that if legislative passage of the budget as defined in [Legislative Law § 5 (3)] has not occurred prior to the first day of any fiscal year, the net amount of any such biweekly salary installment payments to be paid on or after such day shall be withheld and not paid until such legislative passage of the budget has occurred whereupon bi-weekly salary installment payments shall resume and an amount equal to the accrued, withheld and unpaid installments shall be promptly paid to each member” (L 1998, ch 635, §1).
Chapter 635 similarly provides for the withholding of legislative allowances (L 1998, ch 635, § 3).
To avoid dispute in the event that Chapter 635’s withholding provision is triggered, Chapter 635 (2) defines “legislative passage of the budget” as the point in time when the appropriation bill(s) submitted by the Governor:
“have been finally acted on by both houses of the *19 legislature in accordance with article seven of the state constitution and the state comptroller has determined that such appropriation bill or bills that have been finally acted on by the legislature are sufficient for the ongoing operation and support of state government and local assistance for the ensuing fiscal year. In addition, legislation submitted by the governor pursuant to section three of article seven of the state constitution determined necessary by the legislature for the effective implementation of such appropriation bill or bills shall have been acted on” (L 1998, ch 635, § 2, adding Legislative Law § 5 [3]).
In January 1999, the Governor, as required by article VII of the Constitution, presented for legislative approval his proposed budget for fiscal year 1999-2000. Because the Legislature was unable to reach a consensus on the Governor’s budget bill by April 1, 1999, the withholding provision of Chapter 635 was triggered and the Legislature’s pay withheld.[2]
On April 19, 1999, a group of 14 Legislators, 11 of whom had voted against the passage of Chapter 635 and three of whom were newly elected members, commenced this CPLR article 78 proceeding in Supreme Court, Kings County, naming as respondents the Governor, the State Comptroller and the State. In their petition, the Legislators set forth six causes of action challenging the constitutionality of Chapter 635 under the State and Federal Constitutions. The Legislators also moved for preliminary and permanent injunctive relief, as well as final judgment on the merits. In support, each submitted affidavits setting forth the personal financial hardships that they and their families had and would suffer from the State’s continued withholding of their annual pay.
On May 21, 1999, Supreme Court agreed with the Legislators and declared Chapter 635 to be unconstitutional. The court concluded that Chapter 635’s intentional infliction of personal financial hardship upon some Legislators encroached upon the institutional independence of the Legislature as a whole. Because of Chapter 635’s potential effect on the balance of governmental power, Supreme Court concluded that it violates the doctrine of separation of powers and the State constitu *20 tional guarantee that Legislators’ salaries remain fixed (NY Const, art III, § 6; see, 180 Misc 2d 643, 647). The State respondents then brought the instant appeal directly to this Court (see, CPLR 5601 [b] [2]).
The 1777 Constitution, the State’s first, made no provision for the salary of Legislators. Since the Constitution of 1821, however, the Constitution has provided for legislative compensation. The 1821 Constitution provided that Legislators should receive compensation, to be paid out of the public treasury, but with no increase to take effect during the year in which the compensation was made and with no increase beyond the sum of $3 per day.
The 1777 Constitution also required that Legislators meet property qualifications. An 1845 amendment eliminated all property qualifications for holding public office.
The Constitution of 1846 provided that Legislators receive a sum not exceeding $3 per day for their services and an aggregate compensation not exceeding $300, except in cases of impeachment. Until 1947, legislative salaries were set by the People in the Constitution. Following 1947, the Legislature itself, with the approval of the Governor, set its own salary.
Throughout New York State’s history, there has been a struggle over legislative compensation. Some have felt that members of the Legislature should serve with minimum or no compensation. Those favoring this view have felt that Legislators should have some other means of supporting themselves. Other persons have felt that without adequate compensation, those without independent resources could not stand for election or become members of the Legislature, thus excluding a great number of people from public service.[3]
In 1946, the Final Report of the New York State Joint Legislative Committee on Legislative Methods, Practices, Procedures and Expenditures recommended that the salaries of the Legislators be increased from $2,500 to a figure more *21 commensurate with the work required.[4] The report also recommended that the inflexibility of setting legislative salaries in the Constitution be eliminated and that, instead, the authority to raise legislative salaries be placed with the Legislature, and checked by gubernatorial consent.[5] The report concluded, “In revising legislative salaries the Legislature and the Governor would necessarily always be guided by public opinion.”[6] When, in 1947, the People authorized the Legislature to set its own salary with the approval of the Governor, it was with the recognition that the Legislature needed to be able to adequately compensate itself and that this right would not be abused in view of the force of public opinion.
The individual Legislators represent the People of the State of New York. In return, the State Constitution provides that each member of the Legislature shall be compensated for his or her services (NY Const, art III, § 6). By placing legislative compensation beyond the political fray, the People of this State have expressed their interest in achieving legislative pay stability. To that end, article III, § 6 of the New York State Constitution provides, in pertinent part, “Each member of the legislature shall receive for his services a like annual salary, to be fixed by law.”[7]
By its plain and unambiguous terms, article III, § 6 mandates that legislative salaries be “fixed by law” in like amount (NY Const, art III, § 6). This same provision also provides, in equally unambiguous terms, that once fixed, legislative salaries be “receive[d]” (id.).
Like its counterpart in the Federal Constitution (US Const, art I, § 6), article III, § 6 of the State Constitution provides a critical element of governmental stability by prescribing stabil *22 ity in legislative salaries and emoluments. Just as the Federal Constitution places receipt of congressional compensation beyond the reach of the political fray (see, US Const, art I, § 6 [“The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law”]), article III, § 6 requires that the legislative salary be received (see, Dunlea v Anderson, 66 NY2d 265, 268, citing NY Const, art III, § 6 [“With the amendment of section 6, a legislator now ‘receive(s) for his services a like annual salary, to be fixed by law’ ”]). When triggered, Chapter 635, on its face, violates this State constitutional prescription by rendering the receipt of the legislative salary conditional upon the passage of an April 1 budget.
Since 1928, the Constitution has given to the Governor primary authority in preparing a budget. Thus, article VII, § 1 requires the Governor to obtain from the Executive Branch an estimate of expenses. The Governor then prepares a budget which he submits to the Legislature (NY Const, art VII, § 2). That budget must contain “a complete plan of expenditures proposed to be made before the close of the ensuing fiscal year” (NY Const, art VII, § 2). In addition to this plan, the Governor must submit appropriation bills and proposed legislation (NY Const, art VII, § 3). The Legislature may not consider any other appropriation bill until all of the Governor’s bills have been disposed (NY Const, art VII, § 5). While the Legislature may add to, strike out, or reduce items in the Governor’s appropriation bills, the revisions are subject to the Governor’s veto (NY Const, art VII, §§ 3, 6).
The budgetary process mandated by the Constitution requires that the Governor submit appropriation bills and proposed legislation for an entire fiscal year. The budgetary process itself requires the making of political choices. To the extent that a Legislator’s salary depends on agreement regarding what monies should be spent and for what purposes, Chapter 635 introduces an improper mixture of legislative salaries with the merits of un-passed legislation.
Moreover, when one Legislature increases the salary of the next, but then withholds it after a term begins because of the failure to pass legislation, it, in effect, decreases that salary. This also renders Chapter 635 unconstitutional on its face. In my view, no Legislature can exercise this type of control over another. The Constitution permits one Legislature to increase the salary given to the next, but not to make that salary dependent on any passage of legislation, including the State’s budget.
*23 This Court has previously described two salutary purposes underlying article III, § 6. In New York Pub. Interest Research Group v Steingut (40 NY2d 250, 258), this Court stated:
“Here, it may be assumed that the prohibition against increases and decreases in legislators’ compensation and emoluments during their terms of office would serve two salutary purposes — (1) to avoid a conflict of interest by removing from legislators the authority to vote themselves financial benefits at the expense of the public treasury, and (2) to forestall the possibility of manipulation of legislators’ votes by promises of reward or threats of punishment effectuated through changes in salaries or allowances.”
In The Federalist, No. 73, Alexander Hamilton argued that the President of the United States should receive a salary that could neither be increased nor diminished during his term of office, thus freeing him to perform his duties without regard to financial considerations. He stated:
“The legislature, with a discretionary power over the salary and emoluments of the Chief Magistrate, could render him as obsequious to their will as they might think proper to make him. * * * There are men who could neither be distressed nor won into a sacrifice of their duty; but this stern virtue is the growth of few soils; and in the main it will be found that a power over a man’s support is a power over his will. * * *
“The legislature, on the appointment of a President, is once for all to declare what shall be the compensation for his services during the time for which he shall have been elected. This done, they will have no power to alter it, either by increase or diminution, till a new period of service by a new election commences. They can neither weaken his fortitude by operating on his necessities, nor corrupt his integrity by appealing to his avarice.”
The reasoning applied by Alexander Hamilton to the President’s compensation applies with equal force to legislative salaries here.
Article III, § 6 is violated by this non-constitutional enactment that thwarts its purpose of removing personal financial *24 considerations from legislative proposals. It is not an answer to say that the Legislature can determine the time when to pay salaries to its members. That is not the issue before us. The issue is whether the receipt of salaries may be tied to the passage of Specific legislation. In my view, it cannot. To that end, article III, § 6 requires both that legislative salaries be fixed and received.
As for the argument that this Court should refrain from deciding this issue that involves a dispute between the executive and legislative branches of government and between elements within the legislative branch, it is precisely the constitutional role of the judiciary to resolve such disputes.[8] The Court of Appeals has in the past been called upon to resolve conflicts between the Governor and the Legislature. One such conflict occurred in 1928 between Governor Franklin D. Roosevelt and the Legislature over the budget. In 1928, the executive budget had become a part of the State Constitution. In 1929, however, the Legislature adopted an amended budget which required the spending of certain lump sums that could not be changed without the consent of the Chairmen of the Senate Finance and Assembly Ways and Means Committees. When the bill was passed again over the Governor’s veto, the Governor sued. This Court upheld the position of the Governor and concluded that the legislative action was unconstitutional.[9]
In sum, Chapter 635, on its face, is unconstitutional because it authorizes one Legislature to decrease the salary paid to another Legislature during its term of office by first giving and then withholding compensation. It also reverses the historical will of the People, expressed by constitutional amendments in 1845 and 1947, that there be neither property qualifications nor financial incentives provided to the members of the Legislature when deciding issues on the merits in accordance with the democratic process.
For these reasons, I dissent and vote to affirm the order of the Supreme Court.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley *25 and Rosenblatt concur with Judge Bellacosa; Judge Smith dissents and votes to affirm in a separate opinion.
Judgment reversed, without costs, and judgment granted declaring chapter 635 of the Laws of 1998 constitutional.

. Chapter 630 of the Laws of 1998.

. Passage of the New York State budget did not occur until August 4, 1999, whereupon, in accordance with Chapter 635’s formula, the net salaries of the Legislators were finally received.

. Reports of the Proceedings and Debates of the Constitutional Convention of 1821, Assembled for the Purpose of Amending the Constitution, at 419-424.
Proceedings and Debates of New York State Constitutional Convention held in 1867 and 1868, vol I, at 761; vol V, at 3456-3457, 3591-3593.
Revised Record of New York State Constitutional Convention of 1915, vol II, at 1203-1245; vol III, at 2353-2366 (Apr. 6 to Sept. 10, 1915).
Final Report of New York State Joint Legislative Committee on Legislative Methods, Practices, Procedures and Expenditures, 1946 NY Legis Doc No. 31, at 169-171.

. 1946 NY Legis Doc No. 31, at 169-170.

. Id., at 169-170.

. Id., at 171.

. The relevant portion of article III, § 6 states: “Each member of the legislature shall receive for his services a like annual salary, to be fixed by law. He shall also be reimbursed for his actual traveling expenses in going to and returning from the place in which the legislature meets, not more than once each week while the legislature is in session. * * * Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he shall have been elected, nor shall he be paid or receive any other extra compensation. The provisions of this section and laws enacted in compliance therewith shall govern and be exclusively controlling, according to their terms. Members shall continue to receive such salary and additional allowance as heretofore fixed and provided in this section, until changed by law pursuant to this section.”

. See generally, The Federalist, No. 78; Marbury v Madison, 1 Cranch [5 US] 137.

. See, People v Tremaine, 252 NY 27, 45.