*609 OPINION OF THE COURT
Marylin G. Diamond, J.
In this action, plaintiffs challenge the constitutionality of Social Services Law § 95 (10) (b) (ii), (iv) and (v), provisions which set forth eligibility requirements for participation in a state-funded food assistance program which has been established for the benefit of lawful permanent residents and qualified aliens who are denied access under federal law to federally-funded food stamp programs. Plaintiffs have moved, by order to show cause, for a preliminary injunction prohibiting the defendant Brian J, Wing, the Commissioner of the New York State Office of Temporary and Disability Assistance, from applying the restrictions in Social Services Law § 95 (10) (b) (ii), (iv) and (v) so as to deny food assistance to plaintiffs and their families. Plaintiffs also seek class certification for this action.
Background
The federal Food Stamp Program was created by an act of Congress in 1964. (See 7 USC § 2011 et seq.) The program is a federally-funded entitlement program which was initially available to citizens and lawful resident aliens having a net income at or below the federal poverty line. (See 7 USC § 2014 [c].) In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (commonly known as the Welfare Reform Law). (8 USC § 1601 et seq.) The Welfare Reform Law severely restricted the eligibility of legal immigrants for federally-funded benefits otherwise provided to needy persons, including benefits under the federal Food Stamp Program. (See 8 USC §§ 1612, 1613.) Under the Welfare Reform Law, an alien is eligible to receive federal benefits only if he or she fell into the category of “qualified aliens,” which includes legal permanent residents and battered spouses. (See 8 USC § 1641.) The law further restricted the right of even qualified aliens to apply for food stamps, limiting the program to qualified aliens who meet certain criteria not relevant to this action. (See 8 USC § 1612.) In general, all other legal immigrants lost their eligibility for federal food stamps as of August 22, 1996, the effective date of the Welfare Reform Law.
As part of a 1997 revision to the Welfare Reform Law, Congress granted the states authority to use state funds to issue food benefits to those individuals whose entitlement to federal food stamps had been revoked. (See 7 USC § 2016 [j].) Pursuant to this federal authorization, New York, in 1997, adopted its own Food Assistance Program (FAP) to assist certain *610 groups of legad, immigrants who had lost benefits as a result of the Welfare Reform Law. (See Social Services Law § 95 [10] [b].) In establishing this program, New York choose to restrict the group of immigrants who could apply for FAP benefits to lawful permanent residents or qualified aliens who are either elderly, disabled, under 18 years of age or victims of domestic violence. In addition, the immigrants must have (1) resided in the United States on August 22, 1996 (see § 95 [10] [b] [ii]), (2) applied for food stamps in the same social services district in which they resided on August 22, 1996 (see § 95 [10] [b] [ii]), (3) not been outside the United States for more than 90 days in the year preceding their application for benefits (see § 95 [10] [b] [iv]), and (4) either applied for citizenship within 30 days of the application or, if not yet eligible to apply for citizenship, apply within 30 days of becoming eligible (see § 95 [10] [b] [v]). Finally, the statute gave each of the state’s 58 local social services districts the option of participating in the FAP It appears that, as of August 2002, only 10 of the 58 districts were participating in the program.
In this action, plaintiffs assert that the restrictions imposed on eligibility for the FAP under Social Services Law § 95 (10) (b) (ii), (iv) and (v) violate the state and federal constitutional guarantees of equal protection, impermissibly encroach upon the exclusive power of the federal government to regulate immigration and violate article XVII, § 1 of the New York State Constitution, under which the State is required to provide aid, care and support to the needy. They seek declaratory and injunctive relief, as well as retroactive monetary payments. As already noted, plaintiffs have moved, by order to show cause, for a preliminary injunction prohibiting the defendant from applying the restrictions in Social Services Law § 95 (10) (b) (ii), (iv) and (v) so as to deny them and their families food assistance. In signing the order to show cause, the court (Sheila Abdus-Salaam, J.) issued a temporary restraining order enjoining the defendant from withholding food stamps from the named plaintiffs in accordance with the terms of a “so-ordered” stipulation, dated June 27, 2002.
Prior Litigation
In 1998, low-income legal immigrants commenced an action challenging the constitutionality of the identical state FAP restrictions which are challenged herein. As have the plaintiffs in this action, they asserted that the restrictions violated their equal protection rights, as well as their rights under article *611 XVII, § 1 of the State Constitution. In a decision dated May 20, 1999, the Appellate Division, First Department, rejected the challenge and upheld the restrictions, reasoning that, for equal protection purposes, the State’s classification of aliens should be subject to a rational basis test rather than strict scrutiny because the restrictions were enacted in direct response to an act of Congress and that, under the rational basis test, the restrictions were constitutionally proper. (See Alvarino v Wing, 261 AD2d 255 [1st Dept 1999].) With respect to article XVII, the Court held that the plaintiffs’ claim was, in actuality, an equal protection claim since the challenged denial of eligibility for food stamps affected only the manner and level of assistance to the needy and did not amount to a denial of any assistance. (See id. at 256.) As such, the claim was denied.
Subsequent to this decision, the First Department entertained another case involving a challenge to a public assistance classification relating to aliens. (See Matter of Aliessa v Novello, 274 AD2d 347 [2000].) As in Alvarino, the Aliessa plaintiffs were low-income legal immigrants who alleged that immigrant restrictions imposed under the state-funded Medicaid program violated their equal protection and article XVII, § 1 rights. As with the FAR the eligibility of any immigrants to receive state assistance was authorized by the 1997 federal revision to the Welfare Reform Law. As with the FAR eligibility to participate in the program was essentially limited to those aliens who had continuously resided in the United States since at least August 22, 1996. Relying in large part on its decision in Alvarino, the First Department applied the rational basis test and held that the Medicaid restrictions imposed on immigrants did not violate equal protection or article XVII. (See Aliessa v Novello, 274 AD2d at 347.) On appeal, the Court of Appeals reversed. (See Matter of Aliessa v Novello, 96 NY2d 418 [2001].) In doing so, the Court concluded that the strict scrutiny test, rather than the rational basis test, should be applied. (See id. at 430-436.) Applying strict scrutiny, the Court of Appeals held that the statute could not survive. (See id.) As to article XVII, the Court held that the State Medicaid statute “violates the letter and spirit of [this constitutional provision] by imposing on plaintiffs an overly burdensome eligibility condition having nothing to do with need, depriving them of an entire category of otherwise available basic necessity benefits.” (Id. at 429.)
Discussion
A. Preliminary Injunction — In order to obtain a preliminary injunction, the movant has the burden of demonstrating (1) a *612 likelihood of ultimate success on the merits, (2) irreparable injury if provisional relief is withheld, and (3) a balancing of the equities in its favor. (See Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990].) In addition, it is well settled that a legislative enactment is presumptively constitutional and that there is an exceedingly heavy burden of demonstrating beyond a reasonable doubt that a statute violates the Constitution. (See Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, 496 [1985].)
1. Likelihood of Success
a. Equal Protection — The Fourteenth Amendment provides that no state shall “deny to any person within its jurisdiction the equal protection of the laws.” (US Const, 14th Amend, § 1.) The New York State Constitution contains its own equal protection requirement. (See NY Const, art I, § 11.) Whether a particular statutory classification violates the Equal Protection Clause is reviewed under a two-tiered standard. If the particular classification is in the area of economic or social policy, the challenged classification must have a rational basis, i.e., bear a reasonable relationship to some legitimate legislative objective (“rational basis” review). (See, e.g., Dandridge v Williams, 397 US 471, 485 [1970]; Goodwin v Perales, 88 NY2d 383, 398 [1996]; Alevy v Downstate Med. Ctr., 39 NY2d 326, 332 [1976].) Where a statute affects a “fundamental interest or right” or employs a “suspect” classification, it is reviewed under a standard of “strict scrutiny,” requiring that the law “furthers a compelling state interest by the least restrictive means practically available.” (See Bernal v Fainter, 467 US 216, 227-228 [1984]; Alevy v Downstate Med. Ctr., 39 NY2d at 332.)
In this action, the starting point for determining which of the two tests should be applied is the Court of Appeals decision in Aliessa. As already noted, in that case, the Court ruled that the strict scrutiny test should be applied to an equal protection challenge to a state statute which differentiated between aliens on the basis of the length of their residency in this country, entitling some aliens to receive State Medicaid benefits while disqualifying others. In reaching this conclusion, the Court of Appeals recognized that the rational basis test applies to federal legislation which places restrictions on the rights of aliens and that, in some instances, the application of this test may be extended to state legislation which, under the express authority of Congress, implements such federal legislation. (See Aliessa, 96 NY2d at 432-433.) However, emphasizing that, under the *613 United States Constitution, Congress is charged with the exclusive responsibility for establishing uniform rules on immigration and on the conditions imposed on the residence of aliens (id. at 432-433; see also Torao Takahashi v Fish & Game Commn., 334 US 410, 419 [1948]), the Court of Appeals ruled that the rational basis test should only be extended to state legislation which was enacted pursuant to enabling federal legislation that ensures uniformity among the states by prescribing appropriate and specific standards for the treatment of aliens. (See Aliessa, 96 NY2d at 432-433.) In this respect, the Court noted that Congress, in authorizing the states to offer State Medicaid to immigrants who had been disqualified from Federal Medicaid, did not provide any guidelines or standards for the states to use in deciding eligibility and were thus permitted to adopt divergent laws on the subject of citizenship requirements for state medical assistance. (Id. at 435.) Pointing out that the Supreme Court has ruled that Congress does not have the power to authorize the individual states to violate the Equal Protection Clause (see Graham v Richardson, 403 US 365, 382 [1971]), and that Congress, in effect, has authorized New York “to determine for itself the extent to which it will discriminate against legal aliens for State Medicaid eligibility” (Aliessa, 96 NY2d at 433), the Court of Appeals concluded that the challenged state legislation could not take advantage of the applicability of the rational basis test to federal legislation but, rather, must stand on its own under the strict scrutiny test. (Id. at 435-436.)
This analysis and conclusion is dispositive of the equal protection issue which is now before this court. As with the federal legislation in Aliessa, which authorized the states to provide State Medicaid to qualified aliens who were rendered ineligible under the Welfare Reform Law for Federal Medicaid, the federal legislation which authorizes the states to provide food assistance to aliens no longer eligible for federally-funded food stamps does not provide any uniform guidelines or standards for the states to use in deciding eligibility. As in Aliessa, the State can essentially decide for itself the criteria for differentiating between those aliens who are entitled to receive food stamps and those who are ineligible. Indeed, if anything, the criteria which the State Legislature has established for alien entitlement to state-funded food stamps is far more reflective of a policy toward immigration and alien residency than the criteria which the State developed for alien participation in the State *614 Medicaid program. Thus, whereas qualified aliens seeking State Medicaid assistance were ineligible unless they had entered the United States before August 22, 1996 or had resided in the country for five years, participation in the FAP is largely limited to those who not only entered the United States before August 22, 1996, but have also resided in the same social services district since August 22, 1996, have not been outside the United States for more than 90 days in the year preceding their application for benefits, and have applied for citizenship within 30 days of the application or, if not yet eligible to apply for citizenship, within 30 days of becoming eligible to apply for citizenship. As the plaintiffs point out, these restrictions penalize the right to travel. More importantly, they seek to impose a state policy which carves out the terms and conditions of immigration which New York alone has decided are desirable and appropriate. It is a policy which reflects New York’s own concept of “largesse, economics and politics.” (Aliessa, 96 NY2d at 435.) As such, the FAP should not receive through federal law any “special insulation” from strict scrutiny review but, rather, must “be evaluated as any other State statute that classifies based on alienage.” (Id. at 436.)
As already noted, the First Department’s decision to apply the rational basis test in Aliessa was based on the reasoning which it had employed in Alvarino for applying that same test to an equal protection challenge to the FAR Thus, in reversing the First Department’s application of the rational basis test in Aliessa, the Court of Appeals clearly rejected the same reasoning which led the First Department to apply the rational basis test in Alvarino.
In opposing plaintiffs’ application for a preliminary injunction, the State nevertheless argues that although the previously-employed reasoning for applying the rational basis test is no longer available after Aliessa, there is an alternative rationale which supports using this test in response to an equal protection challenge to the FAR Focusing on the fact that the FAP is available solely to aliens, the State argues that the strict scrutiny test should only be applied in cases where state law draws a distinction between aliens and nonaliens and that, in the absence of such a distinction, the rational basis test should apply. In this respect, it points out that the FAP is a new program which the State voluntarily created in order to assist aliens whose eligibility to participate in the federal Food Stamp Program was terminated by the Welfare Reform Law. The State *615 also points out that Social Services Law § 95 (10) (b) withdraws no benefits from aliens and, unlike the State Medicaid program under consideration in Aliessa, in which both citizens and aliens participated, it draws no distinction between citizens and aliens, as citizens are not eligible for food stamp benefits under the FAE According to the State, the fact that the FAP fails to extend state-funded food stamp coverage to all of the aliens who were excluded from the federal Food Stamp Program does not constitute a classification based on alienage since aliens are not being discriminated against vis-a-vis citizens. In support of this argument, the State cites a recent decision by a Massachusetts state court which found that the residency requirements imposed for eligibility in a state public assistance program which was established, in response to the Welfare Reform Law, for the benefit of only aliens should be subject to the rational basis test since no citizens were otherwise eligible. (See Doe v Commissioner of Transitional Assistance, 437 Mass 521, 773 NE2d 404 [Sup Jud Ct, Suffolk County 2002].)
It is true that, unlike the FAP the State Medicaid Program under consideration in Aliessa was available to citizens as well as to aliens. However, there is nothing in the Aliessa decision which suggests that it was predicated on the fact that citizens could participate in the program. Indeed, it is notable that the argument which the State has raised in this action was not raised in either Aliessa or Alvarino. As already discussed, the focus of the Aliessa decision was on the State’s discretionary imposition of a residency requirement which, in differentiating between aliens, did so without federal guidelines and, in effect, established a state policy on immigration which was potentially divergent from the policies of other states. The Court of Appeals ruled that, under such circumstances, the challenged state law could survive only if it passed the strict scrutiny test.
Moreover, although citizens are not eligible to participate in the FAI] there is still discrimination on the basis of alienage since the challenged residency distinctions which the Social Services Law draws among aliens, such as ensuring that they apply for citizenship and that they not move within the state or leave the country for any extended period, are intimately and substantially connected to their very alienage. Presumably, it was for this reason that the plaintiffs have not challenged the age and health limitations imposed on an alien’s eligibility for participation in the FAP These limitations do not reflect alien-age. However, discrimination based on the length of an alien’s *616 residency in the country, state or district, as well as on the status of an alien’s citizenship application, has everything to do with alienage. It is a discrimination which is “directed at aliens” and “only aliens are harmed by it.” (Nyquist v Mauclet, 432 US 1, 9 [1977].) The proposition that a state may adopt its own immigration policy by enacting a law which, based on characteristics unique to alienage, differentiates between aliens as to their entitlement to public assistance benefits and that this policy is subject only to the lenient rational basis test is a proposition which is at odds with the body of case law which has evolved in the area of equal protection. To the extent that the Massachusetts court in Doe concluded that the rational basis test should apply, it is in apparent conflict with the Court of Appeals decision in Aliessa, as well as with the relevant case law.
The court therefore finds that the plaintiffs are likely to establish that the strict scrutiny standard should apply to the challenged state legislation. Since the State, as in Aliessa, does not here attempt to justify Social Services Law § 95 (10) (b) under this standard, the plaintiffs are likely to succeed on the merits of their equal protection claim.
b. Supremacy Clause — Although it is not cited as a basis for either of the two causes of action asserted in the complaint, the plaintiffs nevertheless argue on this motion that the challenged provisions of Social Services Law § 95 (10) (b) violate the Supremacy Clause by improperly encroaching upon the federal government’s exclusive responsibility for establishing a uniform rule of naturalization. Since the State has not asserted any procedural objection to this issue being raised herein, the court will address the matter. Doing so, the court finds that the argument is without merit. As the State points out, the availability of a state-funded Food Stamp Program for aliens who have been disqualified from participation in the federal Food Stamp Program was expressly authorized by Congress. Although Congress did not expressly sanction the specific criteria which the State has established for eligibility in the program, it placed no limits on the residency requirements which a state could impose on aliens. Moreover, the plaintiffs have not referred the court to any federal statute with which Social Services Law § 95 (10) (b) is in conflict. In fact, the plaintiffs’ real complaint is with the broad, guideline-free congressional authorization which gave rise to the challenged legislation. However, in this action, they have not challenged the constitutionality of this federal authorization. Nor have the plaintiffs cited any case which sup *617 ports their assertion that a state which is congressionally authorized to do so has somehow violated the Supremacy Clause by imposing its own eligibility criteria for alien participation in a public assistance program. It is notable that the Court of Appeals in Aliessa, while critical of the breadth of congressional authorization to the states to discriminate against aliens and cognizant of the fact that the ensuing state legislation reflected state policy on immigration, nevertheless did not even suggest that the Supremacy Clause may have been violated. This court, therefore, finds that the plaintiffs are unlikely to succeed on the merits of their Supremacy Clause argument.
c. Article XVII, § 1 of the New York Constitution — Section 1 of article XVII of the New York State Constitution provides that “[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” In interpreting this provision, the courts have held that while it imposes upon the State an affirmative duty to aid the needy, the extent of such aid and the manner in which it is provided is left to the discretion of the Legislature. (See Mark G. v Sabol, 247 AD2d 15, 30 [1st Dept 1998].) The only requirement is that the Legislature may not refuse to aid for reasons unrelated to their need those legal residents whom it has already classified as needy. (See Matter of Bernstein v Toia, 43 NY2d 437, 448-449 [1977].)
In Alvarino (261 AD2d at 255), the First Department found that the restrictions of eligibility for food stamps imposed under Social Services Law § 95 (10) (b) do not violate article XVII, § 1. Indeed, the Court held that the plaintiffs’ objections to the FAP addressed the manner and level of assistance, not the denial of any assistance since all but one of the plaintiffs was otherwise receiving public assistance. (See id. at 255.) Although the Court of Appeals in Aliessa ruled that the restrictions of eligibility for State Medicaid to certain categories of aliens violated article XVII, § 1, that decision is not dispositive. Unlike the Court’s equal protection determination in that same case, its decision regarding article XVII, § 1 was based not on the development of a legal principle but, rather, on the Court’s factual conclusion that meaningful medical assistance was not otherwise available to aliens who were ineligible to participate in the challenged State Medicaid program. Since the First Department’s denied of this constitutional claim against Social Services Law § 95 (10) (b) has not, therefore, been undermined by Aliessa or by any *618 other Court of Appeals decision, this court is bound to follow the earlier decision in Alvarino.
Even if the court were not bound to follow Alvarino, it would nevertheless rule against the plaintiffs on this issue. In support of their claim, plaintiffs argue that since the Legislature has defined legal immigrants as needy and has provided them with a basic food assistance program, it cannot then restrict access to those benefits through eligibility restrictions that have nothing to do with need. The problem with this argument is that the State has never classified legal immigrants as a whole as “needy” within the constitutional definition and thus is not obligated to provide food assistance programs to all legal immigrants under article XVII. Indeed, plaintiffs concede that the FAP was enacted as an optional program which local social services districts could choose to implement or not implement. As the court has already noted, only 10 of the 58 social services districts in this state are even participating in the program. Significantly, plaintiffs do not challenge the provisions making the FAP optional. Thus, their assertion that the Legislature deemed the proposed plaintiff class to be “needy,” as that term has been construed under article XVII, is belied by their very failure to explain how this can be so in view of the optional nature of the FAR
The record before the court also supports the State’s argument that the FAP is intended to be supplemental to the benefits which aliens receive from other state public assistance programs and satisfies needs beyond those recognized by the Legislature as constitutionally required under article XVII. Plaintiffs do not dispute the State’s contention that since the standards for food assistance are more generous than those for public assistance, some individuals who receive the benefits of the FAP may not be needy by public assistance standards. Thus, unlike the medical benefits in Aliessa which the Court of Appeals found to be a basic necessity, food stamps are a supplement and would not have otherwise been available to plaintiffs without the passage of Social Services Law § 95 (10) (b). The court therefore concludes that plaintiffs are unlikely to succeed on their article XVII claim.
d. Statute of Limitations — Finally, the State argues that the plaintiffs are not entitled to a preliminary injunction because this action is likely to be dismissed on the ground that it was not commenced within four months of the time that each plaintiff was notified of the denial of his or her application for *619 FAP benefits. According to the State, even though this action was brought as a declaratory judgment action, it could have been brought as a CPLR article 78 challenge to a determination by a government body or officer and, as such, the four-month statute of limitations under CPLR 217 would be applicable. This argument is without merit. It is well settled that where a proceeding in the form of a declaratory judgment action is commenced against a governmental body or officer, the six-year catch-all limitations period provided in CPLR 213 (1) is applicable unless the claim could have been made in another form to which a specific limitation period is statutorily provided. (See New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 200-201 [1994]; Solnick v Whalen, 49 NY2d 224 [1980].) In this respect, as plaintiffs point out, it is a declaratory judgment action, not a CPLR article 78 proceeding, which is the proper vehicle to challenge the constitutionality of a state statute. (See Press v County of Monroe, 50 NY2d 695, 702 [1980]; New York Pub. Interest Research Group v Steingut, 40 NY2d 250, 254 n 1 [1976].) Since the six-year statute of limitations period thus applies and since this action was brought within this period, the proceeding is timely.
2. Irreparable Injury and Balance of Equities — It is well settled that the loss, reduction or delayed provision of food stamp benefits constitutes irreparable injury. (See Reynolds v Giuliani, 35 F Supp 2d 331, 340 [SD NY 1999]; Willis v Lascaris, 499 F Supp 749, 759 [ND NY 1980].) In view of the threat of such irreparable injury, a balance of the equities clearly weighs in favor of the plaintiffs. Given the court’s conclusion that the plaintiffs are likely to succeed on the merits of their equal protection claim, it is persuaded that a preliminary injunction should therefore be issued. The plaintiffs’ motion for a preUminary injunction is thus granted.
B. Class Certification — Plaintiffs seek class certification for this action pursuant to article 9 of the CPLR. In Alvarino (261 AD2d at 256), the First Department found that class certification to challenge the same statute which plaintiffs challenge herein is unwarranted since “ ‘governmental operations are involved, and . . . subsequent petitioners will be adequately protected under the principles of stare decisis’ (Matter of Jones v Berman, 37 NY2d 42, 57).” This court is bound by this determination. Although plaintiffs suggest that the “government operations” rule is inapplicable because they are seeking monetary relief in the form of retroactive food stamp benefits, *620 the court notes that the plaintiffs in Alvarino also sought retroactive monetary relief. Under the circumstances, plaintiffs’ motion for class certification must be denied.
Conclusion
Accordingly, the plaintiffs’ motion for a preliminary injunction is hereby granted. During the pendency of this action, the defendant shall be restrained from withholding food stamps from the named plaintiffs who would be eligible for food stamps under the FAP but for the operation of Social Services Law § 95 (10) (b) (ii), (iv) or (v). The plaintiffs shall settle an order. Until the entry of such an order, the temporary restraining order shall remain in effect. The plaintiffs’ motion for class certification is denied.